**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BIG ONION TAVERN GROUP, LLC; )
HEADQUARTERS BEERCADE LLC; )
MACHINE 1846 LLC; THE NEW 400 LLC; )
HARPER THEATER LLC; WELCOME )
BACK LLC; LEGACY HOSPITALITY )
LLC; MCBRIDES AURORA INC.; )
MCBRIDE'S PUB INC.; MCBRIDE'S ON )
52 INC.; HOMESLYCE IS WHERE THE )
HEART IS LLC; 3458 NORCLARK )
RESTAURANT LLC; HAPPY CAMPER )
PIZZERIA LLC; 1913 NORTHCO LLC; )
THE BURGER PHILOSOPHY LLC;; TAI'S )
LOUNGE INC.; ALEXANDERS CAFE 64 )
INC.; ALEXANDERS RESTAURANT INC.; )
BK & MM VENTURES LLC; DOUBLE K )
& A SPORTS INC.; OR1 INC.; ROOKIES 5- )
ROSELLE INC.; TRIPLE K & A SPORTS )
BAR INC.; VILLAGE SQUIRE INC.; )
VILLAGE SQUIRE NORTH INC.; )
VILLAGE SQUIRE OF MCHENRY INC.; )
VILLAGE SQUIRE SOUTH INC.; 3471 N )
ELSTON INC.; CALM & CHAOS LLC; 108 )    Hon. Judge Edmond Chang
KINZIE LLC; SANCERRE HOSPITALITY I )
LLC; HARLEN-RASCALS, INC.; YMPV )    Case No. 20-cv-02005
INC.; OVIE BAR & GRILL LLC; )
WOODFIRE BRICK OVEN PIZZA LLC; )    **JURY TRIAL DEMANDED**
ANDERSONVILLE 5310 LLC; CLARK )
5260 LLC; MUNSTER TAVERNS, INC.; )
WELLS 1525 LLC; 1270 STOREFRONT )
LLC; 2450 N MILWAUKEE LLC; 806 W )
RANDOLPH LLC; A PITZALLA BLUES )
LLC; QUEEN MARY LLC; RAMBUTTAN )
LLC; ROBERTA NOWAKOWSKI INC.; )
3478 N CLARK STREET INC; EXIT PLAN )
HOLDINGS LLC; GOUNTANIS )
ENTERPRISES, INC.; ALL DAY )
BROADWAY LLC; TS2 INC.; OLMAR )
CORP INC.; THE BARRELMAN TAVERN )
INC.; 540 WEST MADISON )
HOSPITALITY GROUP LLC; NICHE )
RESTAURANT GROUP LLC )
)
Plaintiffs, )
)

v.                                              )
                                                )
SOCIETY INSURANCE, INC.                         )
                                                )
                                                )
                  Defendant.                    )

## FIRST AMENDED COMPLAINT

Plaintiffs Big Onion Tavern Group, LLC; Headquarters Beercade LLC; Machine 1846 LLC; The New 400 LLC; Harper Theater LLC; Welcome Back LLC; Legacy Hospitality LLC; McBrides Aurora Inc.; McBride's Pub Inc.; McBride's on 52 Inc.; Homeslyce Is Where The Heart Is LLC; 3458 Norclark Restaurant LLC, Happy Camper Pizzeria LLC, and 1913 Northco LLC; The Burger Philosophy LLC; Tai's Lounge Inc.; Alexanders Café 64 Inc.; Alexanders Restaurant Inc.; BK & MM Ventures LLC; Double K & A Sports Inc.; OR1 Inc.; Rookies 5-Roselle Inc.; Triple K & A Sports Bar Inc.; Village Squire Inc.; Village Squire North Inc.; Village Squire of McHenry Inc.; Village Squire South Inc.; 3471 N Elston Inc.; Calm & Chaos LLC; 108 Kinzie LLC; Sancerre Hospitality I LLC; Harlen-Rascals, Inc.; YMPV Inc.; Ovie Bar & Grill LLC; Woodfire Brick Oven Pizza LLC; Andersonville 5310 LLC; Clark 5260 LLC; Munster Taverns, Inc.; Wells 1525 LLC; 1270 Storefront LLC; 2450 N Milwaukee LLC; 806 W Randolph LLC; A Pitzalla Blues LLC; Queen Mary LLC; Rambuttan LLC; Roberta Nowakowski Inc.; 3478 N Clark Street Inc; Exit Plan Holdings LLC; Gountanis Enterprises, Inc.; All Day Broadway LLC; TS2 Inc.; Olmar Corp Inc.; The Barrelman Tavern Inc.; 540 West Madison Hospitality Group LLC; and Niche Restaurant Group LLC ("Plaintiffs"), for their First Amended Complaint against Defendant Society Insurance, Inc. ("Society Insurance"), allege as follows:

## INTRODUCTION

1.     Plaintiffs are owners and operators of restaurants, bars, taverns, and movie theaters in Chicago and its surrounding suburbs whose ordinary business operations have been

1

interrupted—through no fault of their own—by the spread of the novel coronavirus and recent orders issued by the State of Illinois as part of the State's efforts to slow the spread of the COVID-19 global pandemic.  These interruptions present an existential threat to these small, local businesses that employ hundreds and even thousands of Illinois residents.  To protect their businesses from situations like these, which threaten their livelihoods based on factors wholly outside of their control, Plaintiffs obtained business interruption insurance from Society Insurance.  In blatant breach of its insurance obligations that it voluntarily undertook in exchange for Plaintiffs' premium payments, Society Insurance has denied Plaintiffs' claims arising from COVID-19 and the accompanying State-ordered interruption of their businesses.   In many situations, Society Insurance denied the claims prior to conducting any meaningful coverage investigation.

2.     As a result, Plaintiffs now bring this action against Society Insurance for its failure to honor its obligations under commercial businessowners insurance policies issued to Plaintiffs, which provide coverage for losses incurred due to a "necessary suspension" of their operations, including when their ordinary businesses operations are interrupted due to a government order.

3.     Society Insurance markets itself as offering broad "best-in-class" coverage, and insurance brokers selling policies to potential Society Insurance policyholders touted Society Insurance as offering broader coverage than its competitors.

4.     On March 15, 2020, during the term of the policies issued by Society Insurance to Plaintiffs and as the novel coronavirus spread throughout the State of Illinois, Illinois Governor Pritzker issued an order interrupting ordinary business operations at all restaurants, bars, and movie theaters in an effort to address the ongoing COVID-19 pandemic. A few days later, on March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close.  The March

15 and March 20 orders are hereinafter collectively referred to as the "Business Interruption Orders."

5.     Even as state and local governments were considering similar orders in response to COVID-19, insurance brokers continued touting, in written communications to some of Society Insurance's policyholders, that Society Insurance's polices "do[] have one of the broadest forms of coverage . . . ."  In fact, in early March 2020, in anticipation of potential government orders that would interrupt ordinary business operations, a broker emailed one of the Plaintiffs with respect to coverage under Society Insurance's policy, "The City will be advised by the CDC or the health department or public authority.  *If this is to occur, then yes, there is coverage*." (emphasis added).  In the email message, the broker explained that in the event of such an order due to the COVID-19 pandemic, the applicable coverages would be pollution cleanup (up to $50,000), actual loss sustained for business interruption (with no coinsurance penalty), no 60-day limitation on payroll qualifying as continuing necessary operating expenses, customer expense reimbursement for 2 weeks, loss due to action by civil authority for 4 weeks, contamination threat for 3 weeks, and extended business interruption for recovery for 60 days.

6.     As a result of the coronavirus and the ensuing Business Interruption Orders, the Plaintiffs have been forced to halt their ordinary operations, resulting in substantial lost revenues and forcing many of the Plaintiffs to furlough or lay off the majority of their employees. Although the Business Interruption Orders allow restaurants to sell food on a carry-out or delivery basis, Plaintiffs' ordinary operations have been severely interrupted by the loss of alcohol and beverage sales that accompany sit-in service, such that many Plaintiffs determined that it would be even more of an interruption to their ordinary business—and create even more losses—to offer such carry-out or delivery options.  And for other Plaintiffs, who operate bars or taverns, the Business Interruption Orders were tantamount to closure orders.

3

7. But despite Society Insurance's express promise in its policies to cover the Plaintiffs' business interruption losses when they lose the use of their property for ordinary business operations due to dangerous physical conditions like COVID-19, or when the government forces them to close, Society Insurance has issued blanket denials to Plaintiffs for any losses related to COVID-19 and the Business Interruption Orders—often within hours of receiving Plaintiffs' claims—without first conducting any meaningful coverage investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law.

8. In fact, on March 16, 2020, before many of the Plaintiffs had noticed their claims, the CEO of Society Insurance circulated a memorandum to its "agency partners," acknowledging that states, such as Illinois, had "taken steps to limit operations of certain businesses," but prospectively concluding that Society Insurance's policies would likely not provide coverage for losses due to a "governmental imposed shutdown due to COVID-19 (coronavirus)." A copy of this memorandum is attached here as "**Exhibit A**."

9. To the extent Society Insurance has provided any reason to Plaintiffs for its categorical assertion that Plaintiffs' losses are not covered, it is based on the assertion that the "actual or alleged presence of the coronavirus," which led to the Business Interruption Orders that prohibited Plaintiffs from engaging in ordinary business operations, does not constitute "direct physical loss." *See* March 23 Letter attached here as "**Exhibit B**."

10. But, as an initial matter, the civil authority coverage under the Society Insurance policies is triggered when any loss or damage to property results in a government order restricting access to an insured location and does not require "direct physical loss or damage" to an insured's premises, as Society Insurance falsely contends.

11.    In any event, Society Insurance's conclusory statement that the actual or alleged presence of a substance like COVID-19 does not result in "physical loss or damage" is contrary to the law in Illinois. Illinois courts have consistently held that the presence of a dangerous substance in a property constitutes "physical loss or damage." *See, e.g.*, *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 720 N.E.2d 622, 625–26 (Ill. Ct. App. 1999), as modified on denial of reh'g (Dec. 3, 1999).

12.    Moreover, unlike some commercial property policies available in the market, the policies sold by Society Insurance do not include an exclusion for loss caused by a pandemic. Thus, Plaintiffs reasonably expected that the insurance they purchased from Society Insurance included coverage for physical loss and business interruption losses caused by infectious diseases like COVID-19.

13.    If Society Insurance had wanted to exclude pandemic-related losses under the Plaintiffs' policies—as some insurers have attempted to do in other policies—it easily could have attempted to do so on the front-end with an express exclusion.  Instead, Society Insurance waited until after it collected Plaintiffs' premiums, and after a pandemic and the resulting Business Interruption Orders caused catastrophic business losses to Plaintiffs, to try to limit its exposure on the back-end through its erroneous assertion that the presence of the coronavirus is not "physical loss" and therefore is not a covered cause of loss under its policies.

14.    The fact that the insurance industry has created specific exclusions for pandemic-related losses under similar commercial property policies undermines Society Insurance's assertion that the presence of a virus, like the coronavirus, does not cause "physical loss or damage" to property.  If a virus could never result in a "physical loss" to property, there would be no need for such an exclusion.   Moreover, Society Insurance's assertion ignores the fact that their policies promised to provide coverage for losses incurred due to government actions "taken

in response to dangerous physical conditions," even if those dangerous physical conditions cause damage to property at locations other than those insured under their policies.

15. Indeed, Society Insurance marketed its policies as providing broad "best-in-class" coverage, and collected substantial premiums for years from Plaintiffs based on these representations.

16. Making matters worse, on March 27, 2020, Society Insurance's Chief Executive Officer, Rick Parks, sent a memo to all Society Insurance policyholders entitled, "A Message From our CEO on Pandemic Crisis." A copy of Society Insurance's March 27, 2020 memo is attached here as "**Exhibit C**." In the memo, Parks knowingly misrepresented the coverages available under Society Insurance policies by citing pandemic event exclusions that do not exist in policies issued by Society Insurance. As Parks put it: "Insurance has always identified and excluded coverage for loss events that are so large, or are so unpredictable, that they outstrip the capacity of the industry to fund losses, or even price the exposure accurately. Exclusion for acts of war, nuclear incidents and flood are part of insurance policies for these reasons. ***These are the same reasons that coverages for pandemic events are excluded.***" (emphasis added). But there are no such exclusions for pandemic events in Society Insurance's policies.

17. Upon information and belief, Society Insurance sent this memo in furtherance of a corporate strategy designed to intentionally mislead Society Insurance's policyholders about the relevant coverage terms in their policies and discourage policyholders from filing claims for losses arising from COVID-19 business interruption orders.

18. Parks' March 27, 2020 memo also made clear that Society Insurance was not making coverage determinations based on the facts of the claim and the language of the policies that Society Insurance issued, but rather, based upon the financial impact that the pandemic would have upon the insurance industry if Society Insurance covered losses as required by the

language of its own policies. Park asserted in his memo: "The insurance industry combined does not have enough assets to fund these losses and still be able to meet past and future obligations."

19.     In multiple communications with Society Insurance policyholders, Society Insurance has stated that instead of providing coverage in accordance with the terms of the policies it issued, it thinks that a "government bailout" should occur to assist Society Insurance's policyholders. Simply put, Society Insurance has put its own financial interests ahead of the interests of its policyholders (and taxpayers), in violation of Illinois law.

20.     Thus, Society Insurance's wholesale, cursory coverage denials are arbitrary and unreasonable, and inconsistent with the facts and plain language of the policies it issued. These denials appear to be driven by Society Insurance's desire to limit its own financial exposure to the economic fallout resulting from the COVID-19 crisis, rather than to initiate, as Society Insurance is obligated to do, a full and fair investigation of the claims and a careful review of the policies they sold to Plaintiffs in exchange for valuable premiums.

21.     As a result of Society Insurance's wrongful denial of coverage, Plaintiffs file this action for a declaratory judgment establishing that they are entitled to receive the benefit of the insurance coverage they purchased, for indemnification of the business losses they have sustained, for breach of contract, and for bad faith claims handling under 215 ILCS 5/155.

## **PARTIES**

22.     Plaintiff Big Onion Tavern Group LLC ("Big Onion") is an Illinois limited liability company, with its principal place of business in Chicago, Illinois. Big Onion's sole member is Erik Baylis, a citizen of Illinois. Big Onion operates the following restaurants in Chicago: Fatpour Tap Works – Wicker Park, Fatpour Tap Works – McCormick Place, Hopsmith, Woodie's Flat, The Irish Oak, Brunch, and Centre Street Kitchen. Big Onion has a

Businessowners Policy from Society Insurance, Policy No. BP18003904-1, which covered losses for occurrences at each of Big Onion's restaurants.

23.     Plaintiff Headquarters Beercade LLC ("Headquarters Beercade") is an Illinois limited liability company.  The members of Headquarters Beercade are Brian Galati, Chireal Jordan, both citizens of Illinois, and Wexmore Investments LLC.  The members of Wexmore Investments LLC are the Bruce Wechsler Revocable Trust, the Wechsler Family GST Trust, the Morris Family Trust, the David and Antonia Mason Trust, and the Amanda F. Morris Trust.  The trustee of the Bruce Wechsler Revocable Trust is Bruce Wechsler, a citizen of Illinois.  The trustees of the Wechsler Family GST Trust are Jeremy Wechsler, David Wechsler, and Sandra Wechsler, citizens of Illinois.  The trustees of the Morris Family Trust are Jeffrey Morris and Mona Morris, citizens of California.  The trustees of the David and Antonia Mason Trust are David and Antonia Mason, citizens of California.  The trustee of the Amanda F. Morris Trust is Amanda Morris, a citizen of California.  Headquarters Beercade operates Headquarters Beercade – River North in Chicago.  Headquarters Beercade LLC has a Businessowners Policy from Society Insurance, Policy No. BP17034010-6.

24.     Plaintiff Machine 1846 LLC ("Machine 1846") is an Illinois limited liability company.  The members of Machine 1846 are Neil Lauer, Brian Galati, and Chireal Jordan, citizens of Illinois.  Machine 1846 operates Machine:  Engineered Dining & Drink in Chicago's Wicker Park neighborhood.  Machine 1846 has a Businessowners Policy from Society Insurance, Policy No. BP18010967-2.

25.     Plaintiff The New 400 LLC ("The New 400") is an Illinois limited liability company.  The sole member of The New 400 is Tony Fox, a citizen of Illinois.  The New 400 operates the New 400 Theater in Chicago.  The New 400 has a Businessowners Policy from Society Insurance, Policy No. BP16015184-3.

26.     Plaintiff Harper Theater LLC ("Harper Theater") is an Illinois limited liability company.  The sole member of Harper Theater is Tony Fox, a citizen of Illinois.  Harper Theater operates the Harper Theater in Chicago.  Harper Theater has a Businessowners Policy from Society Insurance, Policy No. BP560202-7.

27.     Plaintiff Welcome Back LLC ("Welcome Back") is an Illinois limited liability company.  The members of Welcome Back are Illinois citizens Ryan Marks, Matthew Denk, Eric Jenema, Nicholas Filimon, and Robert Kabakoff, as well as Florida citizen Roger Marks.  Welcome Back owns Welcome Back Restaurant in Chicago.  Welcome Back has a Businessowners Policy from Society Insurance, Policy No. BP18035428-1.

28.     Plaintiff Legacy Hospitality LLC ("Legacy Hospitality") is a Florida limited liability company.  The members of Legacy Hospitality are Ryan Marks, a citizen of Illinois, and Roger Marks, a citizen of Florida.  Legacy Hospitality operates The Vig and The Whale restaurants in Chicago.  Legacy Hospitality has a Businessowners Policy from Society Insurance, Policy No. BP18012824-1.

29.     Plaintiff McBrides Aurora Inc. ("McBrides Aurora") is an Illinois corporation with its principal place of business in Illinois.  McBrides Aurora operates the pub McBride's North in Aurora, Illinois.  McBrides Aurora has a Businessowners Policy from Society Insurance, Policy No. TRM 591971-4.

30.     Plaintiff McBride's Pub Inc. ("McBride's Pub") is an Illinois corporation with its principal place of business in Illinois.  McBride's Pub operates McBride's Pub & Grille in Plainfield, Illinois.  McBride's Pub has a Businessowners Policy from Society Insurance, Policy No. TRM 554796-7.

31.     Plaintiff McBride's on 52 Inc. ("McBride's on 52") is an Illinois corporation with its principal place of business in Illinois.  McBride's on 52 Inc. operates the pub McBride's on

52 in Joliet, Illinois. McBride's on 52 has a Businessowners Policy from Society Insurance, Policy No. TRM 577259-6.

32. Plaintiff Homeslyce Is Where the Heart Is LLC ("Homeslyce") is an Illinois limited liability company. The members of Homeslyce are:

    a. Illinois citizens Clay Hamilton, Josh Iachelli, Scott Behrens, Greg Boyle, Mark Posner, Edward McLoughlin, Troy Schira, Steven Troy Schira, Glenn Hughes, Lance Lauderdale;

    b. Oregon citizens Curt Bennett, Jason Miller, Stephen Harper, Kenneth MacDonald, Linda MacDonald;

    c. Colorado citizens Jarka Durba and Stephen Kern;

    d. The Jacobs Family Trust. The trustee of The Jacobs Family Trust is Jay Jacobs, a citizen of Montana;

    e. North Carolina citizen Michael Kutcher;

    f. Washington citizen Benjamin Wallace;

    g. Stem Ltd Partnership. The partners of Stem Ltd Partnership are Florida citizen Ed McLoughlin and Illinois citizens Tim McLoughlin and Megan Horwath; and

    h. In Your Eye LLC. The members of In Your Eye LLC are Illinois citizens Tim Callahan, Peter Forker, Fred Gonzalez, Anita Rambhajan, Ernest Brown, Todd Baraniak, Aaron Baum, Maureen Callahan, and Glen Keefer.

Homeslyce operates Homeslice Restaurant in Chicago. Homeslyce has a Businessowners Policy from Society Insurance, Policy No. BP17001670.

33. Plaintiff Happy Camper Pizzeria LLC ("Happy Camper Pizzeria") is an Illinois limited liability company. Happy Camper Pizzeria's members are:

a.  Illinois citizens Clay Hamilton, Josh Iachelli, Scott Behrens, Greg Boyle, Renee Boyle, Matthew Wilke, Brooke Wilke, Edward McLoughlin, Stephen Madry, Valerie Vlahos, Troy Schira, Gaurav Vajaria, and Glenn Hughes;

b.  Oregon citizens Carol Bennett, Curt Bennett, Stephen Harper, Kenneth MacDonald, and Linda MacDonald;

c.  North Carolina citizen Michael Kutcher;

d.  Indiana citizens Thomas Jones and Tamara Jones;

e.  Washington citizen Benjamin Wallace;

f.  Texas citizen Chris Tartara;

g.  Stem Ltd Partnership.  The partners in Stem Ltd Partnership are Florida citizen Ed McLoughlin and Illinois citizens Tim McLoughlin and Megan Horwath;

h.  CK 1029 LLC.  CK 1029 LLC's members are Illinois citizens Kevin Killerman and Carmen Rossi; and

i.  Dopey Camper, LLC.  Dopey Camper, LLC's members are Illinois citizens Tim Callahan, Peter Forker, Anita Rambhajan, Ernest Brown, Todd Baraniak, Aaron Baum, Maureen Callahan, and Rebecca Carl.

Happy Camper Pizzeria operates the Happy Camper Pizzeria restaurant in Chicago's Old Town neighborhood.  Happy Camper Pizzeria has a Business Owners Policy from Society Insurance, Policy No. BP15015198-4.

34.  Plaintiff 3458 Norclark Restaurant LLC ("3458 Norclark Restaurant") is an Illinois limited liability company.  The members of 3458 Norclark Restaurant are Illinois citizens Clay Hamilton, Josh Iachelli, and Kevin Killerman.  3458 Norclark Restaurant operates Happy Camper Pizzeria in Chicago's Lakeview neighborhood.  3458 Norclark has a Businessowners Policy from Society Insurance, Policy No. BP19020696-0.

35.     Plaintiff 1913 Northco LLC ("1913 Northco") is an Illinois limited liability company.  The members of 1913 Northco are:

    a.   Illinois citizens Clay Hamilton, Josh Iachelli, Greg Boyle, Edward McLoughlin, Stephen Madry, and Valerie Vlahos;

    b.   Oregon citizens Curt Bennett, Stephen Harper, Kenneth MacDonald, and Linda MacDonald;

    c.   Colorado citizen Stephen Kern;

    d.   North Carolina citizen Michael Kutcher;

    e.   Indiana citizens Thomas Jones and Tamara Jones;

    f.   Washington citizen Benjamin Wallace;

    g.   Stem Ltd Partnership.  The partners in Stem Ltd Partnership are Florida citizen Ed McLoughlin and Illinois citizens Tim McLoughlin and Megan Horwath;

    h.   Trailer Park Eating, LLC.  The members of Trailer Park Eating, LLC are Illinois citizens Tim Callahan, Peter Forker, Anita Rambhajan, Ernest Brown, Todd Baraniak, Aaron Baum, Maureen Callahan, and Ryan Reed; and

    i.   Mystic Pizza Holding, LLC.  The members of Mystic Pizza Holding, LLC are Illinois citizen Ethan Samson, RM/MM Millennium Partnership, and the Kevin J. Brown 1995 Trust dated 11/11/2015.   The partners of RM/MM Millennium Partnership are Illinois citizens Jerrod Melman, Molly Melman, and RJ Melman. The trustee of the Kevin J. Brown 1995 Trust dated 11/11/2015 is Kevin Brown, a citizen of Illinois.

1913 Northco operates Paradise Park restaurant in Chicago's Wicker Park neighborhood.

1913 Northco has a Businessowners Policy from Society Insurance, Policy No. BP18022240-1.

36.    Plaintiff 108 Kinzie, LLC ("108 Kinzie") is an Illinois limited liability company. The members of 108 Kinzie are:

a.  Illinois citizens Derrel McDavid, William McDavid, Linda Matthew, Richard Goodman, Lilly Goodman, Daniel Goodman, Jordan Goodman, Steve Sandler, and John Mays;

b.  New York citizens Christine Maguire, David Vargas, Mark Goldsmith, Robert Levine, John Pizzuto, Todd Reale, Joseph Schueller, George Hindy, James Maguire, Steve Maguire, and Tom Maguire;

c.  New Jersey citizen Todd Reale;

d.  Florida citizens Robert Reale and Erni Valez;

e.  Mercan Corporation, a New York corporation with its principal place of business in New York;

f.  Third Stone Partners, a limited liability company. The sole member of Third Stone Partners is Dave Karrow, a citizen of Illinois;

g.  JT & C, LLC, a limited liability company. The sole member of JT & C, LLC is Jack Cayre, a citizen of New York;

h.  Skor LLC, a limited liability company. The sole member of Skor LLC is Scott Skorobohaty, a citizen of New York;

i.  The Michael Andrew Maguire Irrevocable Trust. The trustee of The Michael Andrew Maguire Irrevocable Trust is Tom Maguire Sr., a citizen of New York;

j.  The Thomas J. Maguire Jr. Irrevocable Trust. The trustee of the Thomas J. Maguire Jr. Irrevocable Trust is Tom Maguire Sr., a citizen of New York; and

k.  JLC Merc LLC, a limited liability company. The sole member of JLC Merc LLC is John Manning, a citizen of New York.

13

108 Kinzie operates the restaurant Mercadito in Chicago's River North neighborhood. 108 Kinzie has a Businessowners Policy from Society Insurance, Policy No. BP16019733-3.

37.    Plaintiff All Day Broadway LLC ("All Day Broadway") is an Illinois limited liability company.  The members of All Day Broadway are:

      a.   Bonvivino Capital, LLC.  The sole member of Bonvivino Capital, LLC is Scott Manlin, a citizen of California;

      b.   California citizen Roger Manlin;

      c.   Illinois citizens Chris Lang, Beth Lang, Arthur Herbst, Nicole Herbst, Debra Sharpe, Neil Freeman, Sana Hakim, Doug Wexler, and Anthony Bowker;

      d.   Florida citizen Ray Zemon; and

      e.   Arizona citizen Jim Clary.

All Day Broadway operates the restaurant Ceres' Table in Chicago's Lakeviewneighborhood.   All Day Broadway has a Businessowners Policy from Society Insurance, Policy No. ROP 587018-5.

38.    Plaintiff Harlen-Rascals, Inc. ("Harlen-Rascals") is an Illinois corporation with its principal place of business in Illinois.  Harlen-Rascals operates the restaurant The Gale Street Inn in Chicago.  Harlen-Rascals has a Businessowners Policy from Society Insurance, Policy No. ROP 591472-5.

39.    Plaintiff Calm & Chaos  LLC ("Calm & Chaos") is an Illinois limited liability company.  The sole member of Calm & Chaos is John Brown, an Illinois citizen.  Calm & Chaos operates the restaurant The Irish Legend in Willow Springs, Illinois.  Calm & Chaos has a Businessowners Policy from Society Insurance, Policy No. BP19034909-0.

40.     Plaintiff YMPV Inc. ("YMPV") is an Illinois corporation with its principal place of business in Illinois.  YMPV operates Crave Bar & Food Joynt in Arlington Heights, Illinois.  YMPV has a Businessowners Policy from Society Insurance, Policy No. TRM 587377-5.

41.     Plaintiff The Burger Philosophy LLC ("Burger Philosophy") is an Illinois limited liability company.  The members of Burger Philosophy are Illinois citizens Gus Lappas, Sol Ashbach, and Ankur Joshi.  Burger Philosophy operates the bar and restaurant Little Bad Wolf in Chicago's Edgewater neighborhood.  Burger Philosophy has a Businessowners Policy form Society Insurance, Policy No. 556637-7.

42.     Plaintiff Gountanis Enterprises, Inc. ("Gountanis Enterprises") is an Illinois corporation with its principal place of business in Illinois.  Gountanis Enterprises operates the restaurant Gojo's Cafe in Waukegan, Illinois.  Gountanis Enterprises has a Businessowners Policy from Society Insurance, Policy No. TRM 453931-13.

43.     Plaintiff 806 W Randolph LLC ("806 W Randolph") is an Illinois limited liability company.  The members of 806 W Randolph LLC are Illinois citizens Ben Pritzker, Ben Lurie, Matt Eisler, Kevin Heisner, and Nick Floyd.  806 W Randolph operates the bar and restaurant Lone Wolf in Chicago's West Loop neighborhood.  806 W Randolph has a Businessowners Policy from Society Insurance, Policy No. TRM 587111-6.

44.     Plaintiff 2450 N Milwaukee LLC ("2450 N Milwaukee") is an Illinois limited liability company.  The members of 2450 N Milwaukee are Illinois citizens Matt Eisler, Ben Pritzker, Ben Lurie, Kevin Heisner, Jeff Donahue, and Wade McElroy.  2450 N Milwaukee operates the bar and restaurant Estereo in Chicago's Logan Square neighborhood.  2450 N Milwaukee has a Businessowners Policy from Society Insurance, Policy No. ROP 587461-5.

45.     Plaintiff Queen Mary LLC ("Queen Mary") is an Illinois limited liability company.  The members of Queen Mary are Illinois citizens Matt Eisler, Ben Pritzker, Ben

Lurie, and Kevin Heisner. Queen Mary operates the bar and restaurant Queen Mary in Chicago's Wicker Park neighborhood. Queen Mary has a Businessowners Policy from Society Insurance, Policy No. BP15028744-4.

46.    Plaintiff Roberta Nowakowski Inc. ("Roberta Nowakowski") is an Illinois corporation with its principal place of business in Illinois. Roberta Nowakowski operates the bar and restaurant Sportsman's Club in Chicago's Ukrainian Village neighborhood. Roberta Nowakowski has a Businessowners Policy from Society Insurance, Policy No. TRM 588422-7.

47.    Plaintiff A Pitzalla Blues LLC ("A Pitzalla Blues") is an Illinois limited liability company. The members of A Pitzalla Blues are Illinois citizens Matt Eisler, Kevin Heisner, Howard Natinsky, and Patrick Poncher. A Pitzalla Blues operates the bar and restaurant Revel Room in Chicago's Wicker Park neighborhood. A Pitzalla Blues has a Businessowners Policy from Society Insurance, Policy No. TRM 586323.

48.    Plaintiff Rambuttan LLC ("Rambuttan") is an Illinois limited liability company. The members of Rambuttan are Illinois citizens Matt Eisler, Ben Pritzker, Ben Lurie, and Kevin Heisner. Rambuttan operates the bar and restaurant Pub Royale in Chicago's Wicker Park neighborhood. Rambuttan has a Businessowners Policy from Society Insurance, Policy No. ROP 589265.

49.    Plaintiff 1270 Storefront LLC ("1270 Storefront") is an Illinois limited liability company. The members of 1270 Storefront LLC are Illinois citizens Brad Bolt, Matt Eisler, Kevin Heisner, and Howard Natinsky. 1270 Storefront operates the tavern The Neon Wilderness in Chicago's Wicker Park neighborhood. 1270 Storefront has a Businessowners Policy from Society Insurance, Policy No. BP18028827-1.

50.    Plaintiff Munster Taverns, Inc. ("Munster Taverns") is an Illinois corporation with its principal place of business in Illinois. Munster Taverns operates the bar and restaurant

Wilde Bar & Restaurant, located in Chicago's Lakeview neighborhood. Munster Taverns has a Businessowners Policy with Society Insurance, Policy No. 591587-9.

51. Plaintiff Clark 5260 LLC ("Clark 5260") is an Illinois limited liability company. The members of Clark 5260 are Illinois citizens Martin Cournane and Denis Sheahan. Clark 5260 operates the bar and restaurant Lady Gregory's in Chicago's Andersonville neighborhood. Clark 5260 has a Businessowners Policy with Society Insurance, Policy No. ROP 591586-8.

52. Plaintiff Wells 1525 LLC ("Wells 1525") is an Illinois limited liability company. The members of Wells 1525 are Illinois citizens Martin Cournane and Denis Sheahan. Wells 1525 operates the bar and restaurant LG's Bar in Chicago's Old Town neighborhood. Wells 1525 has a Businessowners Policy with Society Insurance, Policy No. ROP 591586-8.

53. Plaintiff Andersonville 5310 LLC ("Andersonville 5310") is an Illinois limited liability company. The members of Andersonville 5310 are Illinois citizens Martin Cournane and Denis Sheahan. Andersonville 5310 operates the bar and restaurant Octavio Cantina and Kitchen in Chicago's Andersonville neighborhood. Andersonville 5310 has a Businessowners Policy with Society Insurance, Policy No. BP17036401-2.

54. Plaintiff Ovie Bar & Grill LLC ("Ovie") is an Illinois limited liability company. The members of Ovie are JB Ogilvie LLC, Julmy LLC, and Wislow LLC. The members of JB Ogilvie LLC are Illinois citizens Erin Lakshmanan, Jesse Boyle, Esteban Lizano, Nick O'Meara, Lou Canellis, and Dan Spayer. The sole member of Julmy LLC is Illinois citizen Camille Julmy. The sole member of Wislow LLC is Illinois citizen Robert Wislow. Ovie operates the Ovie Bar & Grill inside of the Ogilvie Transportation Center in Downtown Chicago. Ovie has a Businessowners Policy with Society Insurance, Policy No. TRM 587442-5.

55. Plaintiff Sancerre Hospitality I LLC ("Sancerre Hospitality") is an Illinois limited liability company. The members of Sancerre Hospitality are Illinois citizens Frank Callero, Kara

Callero, and Steven Zaleski. Sancerre Hospitality operates the restaurant BLVD in Chicago's West Loop neighborhood. Sancerre Hospitality has a Businessowners Policy with Society Insurance, Policy No. BP17018107.

56. Plaintiff The Barrelman Tavern Inc. ("Barrelman Tavern") is an Illinois corporation with its principal place of business in Illinois. Barrelman Tavern operates The Barrelman Tavern, located in Chicago's Edgewater neighborhood. Barrelman Tavern has a Businessowners Policy with Society Insurance, Policy No. TRM 586232-5.

57. Plaintiff Exit Plan Holdings LLC ("Exit Plan Holdings") is an Illinois limited liability company. The members of Exit Plan Holdings are Michael T. Sullivan, a citizen of Illinois, and Mark W. Robertson, a citizen of Michigan. Exit Plan Holdings operates 2Bears Tavern Group, which operates the bars The SoFo Tap, Meeting House Tavern, and Jackhammer. Exit Plan Holdings has a Businessowners Policy with Society Insurance, Policy No. BP19032216-1.

58. Plaintiff 3471 N Elston Inc. ("3471 N Elston") is an Illinois corporation with its principal place of business in Illinois. 3471 N Elston operates Chief O'Neill's Pub & Restaurant in Chicago's Avondale neighborhood. 3471 N Elston has a Businessowners Policy with Society Insurance, Policy No. BP17005737.

59. Plaintiff Olmar Corp Inc. ("Olmar") is an Illinois corporation with its principal place of business in Illinois. Olmar operates several bars and restaurants, and a food truck, under the name Cheesie's, as well as the bar and restaurant Whiskey Business in Chicago. Olmar has a Businessowners Policy with Society Insurance, Policy No. BP19012524-0.

60. Plaintiff 3478 N Clark Street Inc. ("3478 N Clark") is an Illinois corporation with its principal place of business in Illinois. 3478 N Clark operates the bar and restaurant

Roadhouse 66 Gas N Grill in Chicago's Lakeview neighborhood. 3478 N Clark has a Businessowners Policy with Society Insurance, Policy No. BP18016167-1.

61. Plaintiff Rookies 5-Roselle Inc. ("Rookies 5") is an Illinois corporation with its principal place of business in Illinois. Rookies 5 operates the bar and restaurant Rookies All American Pub & Grill in Roselle, Illinois. Rookies 5 has a Businessowners Policy with Society Insurance, Policy No. BP18030586-1.

62. Plaintiff OR1 Inc. ("OR1") is an Illinois corporation with its principal place of business in Illinois. OR1 operates the Old Republic Kitchen & Bar in Elgin, Illinois. OR1 has a Businessowners Policy with Society Insurance, Policy No. BP18018024-1.

63. Plaintiff Alexanders Cafe 64 Inc. ("Alexanders 64") is an Illinois corporation with its principal place of business in Illinois. Alexanders 64 operates the Alexander's Cafe in Saint Charles, Illinois. Alexanders 64 has a Businessowners Policy with Society Insurance, Policy No. BP18026058-1.

64. Plaintiff Alexanders Restaurant Inc. ("Alexanders Restaurant") is an Illinois corporation with its principal place of business in Illinois. Alexanders Restaurant operates the Alexander's Restaurant in Elgin, Illinois. Alexanders Restaurant has a Businessowners Policy with Society Insurance, Policy No. BP18009148-0.

65. Plaintiff BK & MM Ventures LLC ("BK & MM") is an Illinois limited liability company. The members of BK & MM are Illinois residents Bob Karas and Mike Maridis. BK & MM operates the bar and restaurant Rookie's All American Sports Bar in Saint Charles, Illinois. BK & MM has a Businessowners Policy with Society Insurance, Policy No. BP18013215-1.

66. Plaintiff Triple K & A Sports Bar Inc. ("Triple K & A") is an Illinois corporation with its principal place of business in Illinois. Triple K & A operates the bar and restaurant

Rookie's All American Pub & Grill in Huntley, Illinois.  Triple K & A has a Businessowners Policy with Society Insurance, Policy No. BP20009226-0.

67.    Plaintiff Double K & A Inc ("Double K & A") is an Illinois corporation with its principal place of business in Illinois.  Double K & A operates the bar and restaurant Rookie's All American Pub & Grill in Hoffman Estates, Illinois.  Double K & A has a Businessowners Policy with Society Insurance, Policy No. BP20007290-0.

68.    Plaintiff Village Squire of McHenry Inc. ("Village Squire – McHenry") is an Illinois corporation with its principal place of business in Illinois.  Village Squire – McHenry operates the bar and restaurant Village Squire in McHenry, Illinois.  Village Squire – McHenry has a Businessowners Policy with Society Insurance, Policy No. BP18017753-1.

69.    Plaintiff Village Squire Inc. ("Village Squire") is an Illinois corporation with its principal place of business in Illinois.  Village Squire operates the bar and restaurant Village Squire in Dundee, Illinois.  Village Squire has a Businessowners Policy with Society Insurance, Policy No. BP18015294-1.

70.    Plaintiff Village Squire North Inc. ("Village Squire – North") is an Illinois corporation with its principal place of business in Illinois.  Village Squire – North operates the bar and restaurant Village Squire in Crystal Lake, Illinois.  Village Squire – North has a Businessowners Policy with Society Insurance, Policy No. BP18015405-1.

71.    Plaintiff Village Squire South Inc. ("Village Squire – South") is an Illinois corporation with its principal place of business in Illinois.  Village Squire – South operates the bar and restaurant Village Squire in South Elgin, Illinois.  Village Squire – South has a Businessowners Policy with Society Insurance, Policy No. BP18007073-1.

72.    Plaintiff Tai's Lounge Inc. ("Tai's Lounge") is an Illinois corporation with its principal place of business in Illinois.  Tai's Lounge operates the bar Tai's Til 4 Lounge in

Chicago's Lakeview neighborhood. Tai's Lounge has a Businessowners Policy with Society Insurance, Policy No. BP20002730 .

73. Plaintiff Woodfire Brick Oven Pizza LLC ("Woodfire") is an Illinois limited liability company. The sole member of Woodfire is Illinois citizen Anne D'Astice. Woodfire operates the restaurants Woodfire Brick Oven Pizza in Dundee, Illinois and Rockford, Illinois. Woodfire has a Businessowners Policy with Society Insurance, Policy No. BP16039985-3.

74. Plaintiff 540 West Madison Hospitality Group LLC ("540 West Madison") is an Illinois limited liability company. The sole member of 540 W Madison is Mila Locations LLC. The sole member of Mila Locations LLC is Mila Holdings LLC. The members of Mila Holdings LLC are Illinois citizen Gazi Nacif and Florida citizens Adam Mizrachi, Amit Alcalay, Royee Alcalay, Yaniv Alcalay, and Ziv Alcalay. 540 West Madison operates the taverns and restaurants Slightly Toasted, Little Toasted, Asadito Taco, and Wok n' Bao, as well as the cafeteria in the office building 540 W. Madison Street in Chicago's West Loop. 540 West Madison has a Businessowners Policy with Society Insurance, Policy No. BP19012098-2.

75. Plaintiff TS2 Inc. ("TS2") is an Illinois corporation with its principal place of business in Illinois. TS2 operates the bar and restaurant Houndstooth Saloon in Chicago's Lakeview neighborhood. TS2 has a Businessowners Policy with Society Insurance, Policy No. BP19039842-0.

76. Plaintiff Niche Restaurant Group LLC ("Niche") is an Illinois limited liability company. The sole member of Niche is Andrea Redmond, a citizen of Illinois. Niche operates the bar and restaurant Niche in Geneva, Illinois. Niche has a Businessowners Policy with Society Insurance, Policy No. ROP 514325.

77. Defendant Society Insurance is an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiffs in Illinois and elsewhere.

Society Insurance is incorporated in the State of Wisconsin and maintains its principal place of business in Wisconsin.

## JURISDICTION & VENUE

78.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

79.    This Court has personal jurisdiction over Society Insurance pursuant to the Illinois "long arm statute," 735 ILCS 5/2-209, because Society Insurance has submitted to jurisdiction in this state by: (a) transacting business in Illinois; (b) contracting to insure a person, property or risk located within Illinois at the time of contracting; and (c) making a contract substantially connected with Illinois.  See 735 ILCS 5/2-209(1), (4), (7).  In addition, Society Insurance exercises substantial, systematic and continuous contacts with Illinois by doing business in Illinois, serving insureds in Illinois, and seeking additional business in Illinois.

80.    This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the Policy with respect to the loss of business arising from the civil authority event detailed below.

81.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to Plaintiffs' claims occurred within the Northern District of Illinois.

## FACTUAL ALLEGATIONS

82.    Plaintiffs incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1–81 above.

### A.  The Society Insurance Policies

83.     In exchange for substantial premiums, Society Insurance sold commercial property insurance policies promising to indemnify the Plaintiffs for losses resulting from occurrences, including the "necessary suspension" of business operations at any insured location caused by a government order, during the relevant time period (each a "Policy" and collectively, the "Policies").

84.     Each Policy was issued to Plaintiffs at their principal places of business in Illinois.

85.     The relevant provisions setting forth the scope of coverage for business interruption losses are the same under each Policy.  An example of a Policy is attached here as "**Exhibit D**."

86.     The Policy is an "all risk" policy that provides broad coverage for losses caused by any cause unless expressly excluded.

87.     The Society Insurance Policies do not purport to exclude losses from infectious diseases, viruses or pandemics.  Thus, the all-risk Policies purchased by the Plaintiffs cover losses caused by COVID-19.

88.     In addition to property damage losses, Society Insurance also agreed to "pay for the actual loss of Business Income" sustained by Plaintiffs "due to the necessary suspension" of Plaintiffs' operations during the period of business interruption caused by "by direct physical loss of or damage to covered property" at the insured's premises.

89.     With respect to business interruption losses, "suspension" means: (1) "the partial slowdown or complete cessation of your business activities"; or (2) "that a part or all of the described premises is rendered untenantable if coverage for Business Income applies."

90.     "Business Income" is defined in relevant part under the Policies as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred" plus "continuing necessary operating expenses incurred."

91.     Society Insurance also promised to "pay necessary Extra Expense" Plaintiffs incur during the period of interruption that they "would not have incurred if there had been no direct physical loss or damage to covered property at the described premises."

92.     "Extra Expense" is defined in relevant part under the Policies as any expense incurred (1) "to avoid or minimize the suspension of business and to continue operations at the described premises"; (2) "[t]o minimize the suspension of business if [Plaintiffs] cannot continue operations"; or (3) "to [r]epair or replace any property[.]"

93.     The Society Insurance Policies also include "Civil Authority" coverage, pursuant to which Society Insurance promised to pay for the loss of Business Income and necessary Extra Expense sustained by Plaintiffs "caused by action of civil authority that prohibits access" to Plaintiffs' insured premises.

94.     This Civil Authority coverage is triggered when any non-excluded cause results in "damage to property other than property" at the Plaintiffs' premises, and is intended to cover losses resulting from governmental actions "taken in response to dangerous physical conditions."

95.     The Society Insurance Policies further extend coverage for Business Income losses and Extra Expense, as well as other losses, when a business is suspended due to "contamination" that results in "an action by a public health or other governmental authority that prohibits access" to an insured location.

96.     "Contamination" is broadly defined under the Society Insurance Policies to include any "dangerous condition" at an insured location.

**B.  The Plaintiffs' Losses Due to the Coronavirus Pandemic and the Business Interruption Orders.**

97. On March 11, 2020, the World Health Organization declared that the emerging threat from the novel coronavirus—otherwise known as COVID-19—constituted a global pandemic.

98. Emerging research on the virus and recent reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

99. In response to the pandemic, and the spread of the coronavirus in Chicago and throughout Illinois, Illinois Governor Pritzker issued Executive Order 2020-07 on March 15, 2020 requiring that all bars, restaurants, and movie theaters close to the public beginning on March 16, 2020 and continuing through March 30, 2020. This order has since been extended through at least May 30, 2020.

100. The continuous presence of the coronavirus on or around Plaintiffs' premises has created a dangerous condition and rendered their premises unsafe and unfit for their intended use and therefore caused physical property damage or loss under the Policies.

101. Executive Order 2020-07 required that bars and restaurants in Illinois "must suspend service for and may not permit on-premises consumption," and was issued in direct response to these dangerous physical conditions, and prohibited the public from accessing Plaintiffs' restaurants, thereby causing the necessary suspension of their operations and triggering the Civil Authority and Contamination coverage under the Policies. Executive Order 2020-07 specifically states, "the Illinois Department of Public Health recommends Illinois residents avoid group dining in public settings, such as in bars and restaurants, which usually involves prolonged close social contact contrary to recommended practice for social distancing,"

and that "frequently used surfaces in public settings, including bars and restaurants, if not cleaned and disinfected frequently and properly, also pose a risk of exposure."

102. Governor Pritzker's March 20, 2020 Business Interruption Order (Executive Order 2020-10), likewise was made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiffs' premises, and extended the requirement that bars and restaurants in Illinois "must suspend service for and may not permit on-premises consumption" through April 7, 2020.

103. Governor Pritzker's April 1, 2020 Business Interruption Order (Executive Order 2020-18), likewise was made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiffs' premises, and extended the requirement that bars and restaurants in Illinois "must suspend service for and may not permit on-premises consumption" through April 30, 2020.

104. Governor Pritzker's April 30, 2020 Business Interruption Order (Executive Order 2020-32), likewise was made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiffs' premises, and extended the requirement that bars and restaurants in Illinois must suspend service for any may not permit on-premises consumption through May 30, 2020.

105. Like the March 15, 2020 Business Interruption Order, the March 20, 2020, April 1, 2020, and April 30, 2020 Business Interruption Orders prohibited the public from accessing Plaintiffs' restaurants, thereby causing the necessary suspension of their operations and triggering the Civil Authority and Contamination coverage under the Policies.

106. As a result of the Business Interruption Orders, the Plaintiffs have each suffered substantial Business Income losses and incurred Extra Expense. The covered losses incurred by Plaintiffs and owed under the Policies is increasing every day, but are expected to exceed $20

million dollars. As a result of these catastrophic losses, many of the Plaintiffs have been forced to furlough their workers and may have to close some or all of their locations permanently.

107.   Following the March 15, 2020 Business Interruption Order, the Plaintiffs each either: (a) submitted a claim to Society Insurance requesting coverage for their business interruption losses promised under the Policies; or (b) had claims submitted by Society Insurance's agents—who were not working on behalf of Plaintiffs—without Plaintiffs' knowledge or consent (collectively, the "Business Interruption Claims").

108.   Society Insurance has denied each of the Business Interruption Claims, either verbally or in writing.

## COUNT I: DECLARATORY JUDGMENT

109.   Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in paragraphs 1–108 above.

110.   Each Policy is an insurance contract under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing the interruption of their ordinary business operations.

111.   Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies.

112.   Society Insurance has arbitrarily and without justification refused to reimburse Plaintiffs for any losses incurred by Plaintiffs in connection with the covered business losses related to novel coronavirus, the Business Interruption Orders, and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

113.   An actual case or controversy exists regarding Plaintiffs' rights and Society Insurance's obligations under the Policies to reimburse Plaintiffs for the full amount of losses

incurred by Plaintiffs in connection with Business Interruption Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

114.   Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court declaring the following:

(a) Plaintiffs' losses incurred in connection with the novel coronavirus, the Business Interruption Orders and the and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policies;

(b) Society Insurance has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiffs' losses by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and

(c) Society Insurance is obligated to pay Plaintiffs for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Business Interruption Orders during both the four-week indemnity period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT II: BREACH OF CONTRACT

115.   Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in paragraphs 1–114 above.

116.   Each Policy is an insurance contract under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy, such as business losses incurred as a result of the government orders interrupting their ordinary business operations and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

117.   Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

118.   By denying coverage for any business losses incurred by Plaintiffs in connection with the novel coronavirus, the Business Interruption Orders, and the COVID-19 pandemic, Society Insurance has breached its coverage obligations under the Policies.

119.   As a result of Society Insurance's breaches of the Policies, Plaintiffs have sustained substantial damages for which Society Insurance is liable, in an amount to be established at trial.

## COUNT III: STATUTORY PENALTY FOR BAD FAITH DENIAL OF INSURANCE UNDER 215 ILCS 5/155

120.   Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in paragraphs 1–119 above.

121.   Upon receipt of the Business Interruption Order Claims, Society Insurance immediately denied the claims (either verbally or through cursory emails) without conducting any investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law.  See 215 ILCS 5/154.6.

122.   To discourage policyholders from even filing claims, Society Insurance, through its Chief Executive Officer Rick Parks, misled policyholders by citing a pandemic exclusion that does not exist in policies issued by Society Insurance in a March 27, 2020 memo issued to all policyholders, in blatant violation of Illinois law that prohibits insurers from knowingly misrepresenting to their insureds relevant facts or policy provisions contained in policies they issued.  *See id*.

123.   To make matters worse, based on information and belief, Society Insurance directed its insurance agents, who are not Plaintiffs' agents, to make sham claim notifications before Society Insurance's policyholders even noticed their claims.  Society Insurance took these actions, before claims were even submitted, as part of its plan to discourage claim notifications

and to avoid any responsibility for its policyholders' staggering losses, in violation of Illinois law.

124.   Society Insurance's denials were vexatious and unreasonable.

125.   Society Insurance's denials constitute "improper claims practices" under Illinois law—namely Society Insurance's (1) refusals to pay Plaintiffs' claims without conducting reasonable investigations based on all available information and (2) failure to provide reasonable and accurate explanations of the bases in its denials.  See 215 ILCS 5/154.6 (h), (n).

126.   In several cases, Society Insurance offered no reason for its denials and failed to raise any bona fide disputes as to the whether the claims were covered by the Policies.

127.   Therefore, pursuant to 215 ILCS 5/155, Plaintiffs request that, in addition to entering a judgment in favor of Plaintiffs and against Society Insurance for the amount owed under the Policies at the time of judgment, the Court enter a judgment in favor of Plaintiffs and against Society Insurance for an amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiffs are entitled to recover under the Policies, exclusive of costs; and (2) $60,000 per Plaintiff.  *See* 215 ILCS 5/155.

128.   Plaintiffs further request that the Court enter a judgment in favor of Plaintiffs and against Society Insurance in an amount equal to the attorneys' fees and costs incurred by Plaintiffs for the prosecution of this coverage action against Society Insurance, which amount will be proved at or after trial, pursuant to 215 ILCS 5/155.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray that the Court:

1.   Enter a declaratory judgment on Count II of the Complaint in favor of Plaintiffs and against Society Insurance, declaring as follows:

(a) Plaintiffs' losses incurred in connection with the novel coronavirus, the Business Interruption Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policies;

(b) Society Insurance has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiffs' losses by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and

(c) Society Insurance is obligated to pay Plaintiffs for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Business Interruption Orders during the four-week indemnity period and during the necessary interruption of their businesses stemming from the COVID-19 pandemic.

2. Enter a judgment on Count II of the Complaint in favor of Plaintiffs and against Society Insurance and award damages for breach of contract in an amount to be proven at trial;

3. Enter a judgment on Count III of the Complaint in favor of Plaintiffs and against Society Insurance in the amount equal to amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiffs are entitled to recover under the Policies, exclusive of costs; and (2) $60,000 per Plaintiff;

4. Enter a judgment in favor of Plaintiffs and against Society Insurance in an amount equal to all attorneys' fees and related costs incurred for the prosecution of this coverage action against Society Insurance, pursuant to 215 ILCS 5/155, which amount to be established at the conclusion of this action;

5. Award to Plaintiffs and against Society Insurance prejudgment interest, to be calculated according to law, to compensate Plaintiffs for the loss of use of funds caused by Society Insurance's wrongful refusal to pay Plaintiffs for the full amount in costs incurred in connection with the Business Interruption Claims.

6. Award Plaintiffs such other, further, and additional relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

Respectfully submitted this 8th day of May 2020.

*/s/ Patrick M. Collins*
Patrick M. Collins
Livia M. Kiser
Christopher J. O'Malley
KING & SPALDING LLP
353 N Clark Street
12th Floor

31

Chicago, IL 60654
312-764-6901 (Phone)
pcollins@kslaw.com
lkiser@kslaw.com
comalley@kslaw.com


Shelby S. Guilbert, Jr.
Joseph M. Englert
(*pro hac vice* motions pending)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
(404) 572-4600 (Phone)
sguilbert@kslaw.com
jenglert@kslaw.com

*Attorneys for Plaintiffs*