**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| BIG ONION TAVERN GROUP, LLC; et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-02005 |
| v. | ) ) | |
| SOCIETY INSURANCE, | ) ) | Honorable Judge Edmond E. Chang |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOCIETY INSURANCE'S
MOTION TO DISMISS UNDER RULE 12(b)(6)
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Thomas B. Underwood (#3122933)
Michael D. Sanders (##6230187)
Michelle A. Miner (#6299524)
Amy E. Frantz (#6312526)
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
tbu@pw-law.com
msanders@pw-law.com
mminer@pw-law.com
afrantz@pw-law.com

*Attorneys for Society Insurance*

TABLE OF CONTENTS

Table of Cases ........................................................................................................... i

Introduction .............................................................................................................. 1

Social Distancing Executive Orders Issued by Governor Pritzker Introduction ................... 2

There Is No Coverage Under the Society Policies As a Matter of Law ................................. 3

   I.    There is no Coverage Under The Business Income Or Extra Expense Additional Coverages Because Plaintiffs' Claim Was Not the Result of "Physical" Loss or Damage, nor Was It Caused by a Covered Cause of Loss ................................... 4

        A.    The Actual or Suspected Presence of the Coronavirus Does Not Cause A Direct "Physical" Loss or Damage and is Not a Covered Cause of Loss ............... 4

        B.    The Partial Temporary Limitation on Plaintiffs' Operations Imposed by Governor Pritzker's Executive Orders is Not a "Physical" Loss or Damage as a Matter of Law ................................................................................... 9

        C.    The Period of Restoration Clause is Further Evidence that "Physical" Loss or Damage Requires a Tangible Change in the Physical Characteristics of Property ..................................................................... 11

   II.    There is No Coverage Under the Civil Authority Additional Coverage Part ................... 13

   III.   There is No Coverage Under the Contamination Additional Coverage Part ................... 16

   IV.   The Ordinance or Law Exclusions Prevents Coverage For Plaintiffs' Claims ................. 17

   V.    Plaintiffs' Claim for Statutory Bad Faith Fails Because There is No Coverage Under the Society Policies and a Bona Fide Coverage Dispute ....................................... 19

Conclusion ............................................................................................................. 20

# TABLE OF CASES

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, No. Civ.A. 02-106, 2002 WL 31996014 (E.D. La. Sept. 30, 2002) ........................................................................................ 14

*Addison Automatics, Inc. v. Hartford Casualty Ins. Co.,* No. 13-cv-1922, 2015 WL 1543216, at * 5 (N.D. Ill. Mar. 31, 2015). ................................................................................ 3

*Advance Cable Co. v. Cincinnati Ins. Co.*, 788 F.3d 743 (7th Cir. 2015) ...................................... 5

*Am. Alliance Ins. Co. v. 1212 Restaurant Grp., L.L.C.*, 794 N.E.2d 892 (Ill. App. Ct. 2003) .... 19

*Am. Family Mut. Ins. Co. v. Fisher Dev., Inc.*, 909 N.E. 2d 274 (Ill. App. Ct. 2009) ................ 20

*Brothers Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611 (D.C. 1970). ...................................... 11

*Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102 (7th Cir. 2000)...... 19

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* No. Civ. 98–434–HU, 1999 WL 619100 (D.Or. Aug.4, 1999) ........................................................................................................ 6, 8

*Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill. 2d 384, 620 N.E.2d 1073 (Ill.1993) ....................................................................................................... 3, 4

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) ......................... 15, 20

*Fiorentini v. Paul Revere Life Ins. Co.*, 893 F.3d 476 (7th Cir. 2018) .......................................... 4

*Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 930 N.E.2d 999 (Ill. 2010) ............................... 4, 13

*Hoover v. Country Mut. Ins. Co.*, 975 N.E.2d 638 (Ill. App. Ct. 2012) ...................................... 20

*Ill. State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468 (Ill. App. Ct. 2012)........... 19, 20

*Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922 (N.Y. App. Div. 2015) ............... 19

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.,* No. 09-6057, 2010 WL 4026375 (E.D. La. Oct. 12, 2010) .............................................................................. 15

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman LLC v. Nat'l Fire Ins. Co. of Hartford,* No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007)....................................... 14

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins.,* --- F. Supp. 3d ---, No. 4:19-cv-00693, 2020 WL886120 (D. S.C. Feb. 24, 2020).................................................................................... 15

*Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E. 2d 1130, 1144 (Ohio Ct. App. 2008)................................................................................................................... 6, 7

*Morris v. Auto-Owners Ins. Co.*, 239 Ill.App.3d 500, 606 N.E. 2d 1299 (Ill. App. Ct. 1993)..... 19

*Mutlu v. State Farm Fire and Casualty,* 337 Ill. App. 3d 420, 785 N.E.2d 951 (Ill. App. Ct. 2003) ...................................................................................................................................... 10

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014) ................................................................................................................ 10, 12

*One Place Condominium, LLC v. Travelers Property Cas. Magistrate Co.*, No. 11-C-2520, 2014 WL 1018192 (N.D. Ill. Mar. 17, 2014)....................................................................................... 20

*Pentair v. Am. Guarantee and Liab. Ins.*, 400 F.3d 613 (8th Cir. 2005)....................................... 11

*Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017 (7th Cir. 2013)................................... 20

*Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.,* 139 F.3d 561, 565 (7th Cir.1998) ...................................................................................................................................... 3

*Roundabout Theatre Company v. Continental Casualty,* 302 A.D.2d 1 (N.Y. App. Div. 2002) . 10

*Schewe v. Home Ins. Co.*, 80 Ill. App. 3d 829, 400 N.E. 2d 501 (Ill. App. Ct. 1980).................. 4

*Source Food Tech. v. U.S. Fid. and Guaranty.* 465 F.3d 834 (8th Cir. 2006)............................ 11

*St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 146 Ill. App. 3d 107, 496 N.E.2d 1176 (Ill. App. Ct 1986) ............................................................................ 4

*State Auto Property and Cas. Ins. Co. v. Brumit Services, Inc.*, 877 F.3d 355, 357 (7th Cir. 2017) ........................................................................................................................ 4

*Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 757 N.E.2d 481 (2001)...................... passim

*Uhlich Children's Adv. Network v. Nat'l Union Fire Ins. Co.*, 929 N.E.2d 531 (Ill. App. Ct. 2010) ............................................................................................................................ 19

*United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128 (2d Cir. 2006) ................... 15

*Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 Fed. Appx. 569 (6th Cir. 2012).............. 6, 7, 8

*Ward Gen'l Ins. Servs., Inc. v. Employer's Fire Ins. Co.*, 7 Cal. Rptr. 3d 844 (Cal. Ct. App. 2003) ........................................................................................................................ 5, 6

*Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013).......................................... 4, 12

*Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773 (7th Cir. 2015)................................................... 4

*Windridge of Naperville Condo v. Philadelphia Indem. Ins. Co.,* 932 F.3d 1035 (7th Cir. 2019). 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| BIG ONION TAVERN GROUP, LLC; et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-02005 |
| v. | ) ) | |
| SOCIETY INSURANCE, | ) ) | Honorable Judge Edmond E. Chang |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOCIETY INSURANCE'S
MOTION TO DISMISS UNDER RULE 12(b)(6)
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

There is no insurance coverage under the Society Policies for Plaintiffs' claims for loss of business income. Whether there is coverage under the Society Policies is a pure issue of law that should be decided by this Court by either dismissing the First Amended Complaint with prejudice for failure to state a claim under Rule 12(b)(6) or, in the alternative, on summary judgment pursuant to Rule 56, as the facts regarding the nature and cause of Plaintiffs' losses are undisputed.[1]

Plaintiffs seek coverage under four of the additional coverage provisions found in the Businessowners Special Property Coverage Form of the Society Policies: Business Income, Extra Expense, Civil Authority, and Contamination, all of which have specific terms and conditions that must be met before coverage is triggered. Plaintiffs' losses do not fall within the terms and conditions for coverage under any of these additional coverage parts; therefore, Society is entitled to dismissal or summary judgment with a declaration that there is no insurance coverage under the Society Policies for Plaintiffs' claims. In addition, since there is no coverage under the Society

---

[1] Society adopts and incorporates its Motion to Dismiss Pursuant to Rule 12(b)(6) or, in the Alternative, For Summary Judgment and its Local Rule 56.1(a)(3) Statement of Undisputed Material Facts as though stated herein.

Policies and a *bona fide* dispute exists regarding coverage and policy interpretation, Plaintiffs are not entitled to damages or an award of attorneys' fees under 215 ILCS 5/ 155 and dismissal with prejudice or summary judgment should be granted in Society's favor with respect to Count III.

### SOCIAL DISTANCING EXECUTIVE ORDERS ISSUED BY GOVERNOR PRITZKER.

Beginning in March, Illinois Governor J.B. Pritzker issued several executive orders (collectively, "the Executive Orders") that are relevant to this litigation. Executive Order 2020-07 was issued on March 16, 2020 ("the March 16 Order") and states that "social distancing, which consists of maintain [sic] at least a six-foot distance between people, is the paramount strategy for minimizing the spread of COVID-19." (Society's Stmt. of Undisputed Material Facts ("SOF") at ¶¶ 4-6.) At the time of the Executive Orders, "the number of suspected COVID-19 cases in Illinois [was] increasing exponentially . . . indicating that drastic social distancing measures [were] needed." (*Id.* at ¶ 6.) Accordingly, businesses that provide food and beverages were no longer allowed to do so for on-premises consumption. (*Id.* at ¶ 7.) However, such businesses were "permitted and encouraged to serve food and beverages so that they may be consumed off-premises, as currently permitted by law, through means such as in-house delivery, third-party delivery, drive-through, and curbside pick-up. In addition, customers may enter the premises to purchase food or beverages for carry out." (*Id.*) The reason for the prohibition of on-premises consumption of food at restaurants, as specified in the March 16 Order, was to reduce the transmission of COVID-19 because public dining "usually involves prolonged close social contact contrary to recommended practice for social distancing." (*Id.* at ¶ 8.)

Executive Order 2020-10 was issued on March 20, 2020 ("the March 20 Order"). (*Id.* at ¶ 9.) The purpose of the March 20 Order was "for the preservation of public health and safety throughout the entire State of Illinois and to ensure that our healthcare delivery system is capable

of serving those who are sick . . . [and] to slow and stop the spread of COVID-19." (*Id.* at ¶ 11.) It prohibited gatherings of more than ten people and required all businesses and operations in the state to cease, except for "Essential Businesses and Operations," which it "encouraged" to remain open. (*Id.* at ¶¶ 10, 13.) "Essential Businesses and Operations" included "[r]estaurants and other facilities that prepare and serve food, but only for consumption off-premises." (*Id.* at ¶ 12.) Additionally, the March 20 Order allowed employees of Non-Essential Businesses to perform "Minimum Basic Operations" on their premises, including processing payroll and employee benefits, ensuring security of the premises, maintaining inventory, and preserving the condition of the premises. (*Id.* at ¶ 16.)

The March 20 Order further required Illinois residents to "shelter in place" but allowed citizens to leave their homes to perform Essential Activities, including obtaining and delivering food, and to operate Essential Businesses and Operations. (*Id.* at ¶ 15.) "Outdoor Activity," including running, walking, hiking, or biking, is an Essential Activity, as is shopping for "necessary supplies and services," including household consumer products. (*Id.* at ¶ 17.)

### THERE IS NO COVERAGE UNDER THE SOCIETY POLICIES AS A MATTER OF LAW.

The only issue in this case is a question of law: whether the losses claimed by Plaintiffs come within the terms and conditions of the insurance contracts between the parties. Under Illinois law, which applies to policies issued in Illinois to Illinois businesses such as Plaintiffs', the construction of an insurance policy is a question of law, not fact, and is properly resolved by the court on a dispositive motion. *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.,* 139 F.3d 561, 565 (7th Cir.1998) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill. 2d 384, 620 N.E.2d 1073, 1077 (Ill.1993)); *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1023-24 (7th Cir. 2013). The existence of coverage is an essential

3

element of Plaintiffs' case, and Plaintiffs have the burden to establish their loss falls within the terms of the Society Policies. *Fiorentini v. Paul Revere Life Ins. Co*., 893 F.3d 476, 480 (7th Cir. 2018) (citing *St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co*., 146 Ill. App. 3d 107, 109-110, 496 N.E.2d 1176 (Ill. App. Ct 1986)).

The court must construe the policy as a whole "'taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract.'" *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 778 (7th Cir. 2015) (citing *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391). The policy must be read as a whole, "because it must be assumed that every provision was intended to serve a purpose." *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013) (citations omitted); *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433, 930 N.E.2d 999 (Ill. 2010). Insurance policies "must be construed and enforced as made by the parties; the courts have no right to make a new contract for the parties..." *Schewe v. Home Ins. Co*., 80 Ill. App. 3d 829, 832, 400 N.E. 2d 501 (Ill. App. Ct. 1980). Clear and unambiguous policy terms and provisions must be taken in their plain, ordinary and popular sense. *State Auto Property and Cas. Ins. Co. v. Brumit Services, Inc.*, 877 F.3d 355, 357 (7th Cir. 2017); *Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 292-93, 757 N.E.2d 481 (2001).

I. **THERE IS NO COVERAGE UNDER THE BUSINESS INCOME OR EXTRA EXPENSE ADDITIONAL COVERAGES BECAUSE PLAINTIFFS' CLAIM WAS NOT THE RESULT OF "PHYSICAL" LOSS OR DAMAGE, NOR WAS IT CAUSED BY A COVERED CAUSE OF LOSS.**

A. **THE ACTUAL OR SUSPECTED PRESENCE OF THE CORONAVIRUS DOES NOT CAUSE A DIRECT "PHYSICAL" LOSS OR DAMAGE AND IS NOT A COVERED CAUSE OF LOSS.**

The Business Income and Extra Expense additional coverages of the Society Policies cover loss of business income and extra expenses sustained due to a suspension of the insured's

4

operations <u>only</u> if that suspension is caused by a "direct <u>physical</u> loss of or damage to covered property at the described premises."  (SOF at ¶¶ 35, 37 (emph. added).)  Additionally, the Society Policies require that the loss or damage be caused by a Covered Cause of Loss, i.e., a "direct physical loss."  (*Id.* at ¶¶ 34-35, 37.)  Plaintiffs do not present a claim for "direct physical loss of or damage to covered property at the described premises."  Under the plain language of the Society Policies and Illinois law, the term "physical" in the phrases "direct physical loss of or damage to covered property" and "direct physical loss" clearly modifies "loss of or damage to" and "loss." *Eljer Mfg., Inc.*, 197 Ill. 2d at 301*; see also, Ward Gen'l Ins. Servs., Inc. v. Employer's Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 489 (Cal. Ct. App. 2003) (finding that the word "physical" modifies both loss and damage because "[m]ost readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears").

Under Illinois law, a property sustains a "physical" injury when it "is altered in appearance, shape, color or in other material dimension."  *Eljer Mfg., Inc.*, 197 Ill. 2d at 301.  Conversely, intangible damage, such as diminution in value, is not a "physical" injury to property.  *Id.* at 301-02.  The Seventh Circuit has similarly found that the requirement of a "physical" loss is met where there is a change in the physical, as opposed to intangible, characteristics of the property.  *Advance Cable Co. v. Cincinnati Ins. Co.*, 788 F.3d 743, 747 (7th Cir. 2015) (construing policy under Wisconsin law); *see also*, *Windridge of Naperville Condo v. Philadelphia Indem. Ins. Co.,* 932 F.3d 1035, 1040 (7th Cir. 2019) (construing policy under Illinois law).  As explained by a leading treatise on insurance law (*Couch on Insurance*): "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured

merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A *Couch On Insurance* § 148.46 (3d Ed. 2019).

The interpretation of "physical" in *Eljer Manufacturing* is consistent with the decisions of courts across the country that have interpreted the phrase "direct physical loss." *See, e.g.*, *Gavrilides Mgmt. Co. et al. v. Michigan Ins. Co*., Case No. 20-258-CB-C30, Ingham County, MI, July 1, 2020 Hr'g, oral ruling available at https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be[2] (court's oral ruling begins at minute 23:13 of recording, transcript attached hereto as Ex. A) (holding in the context of a COVID-19 loss of business income claim that "direct physical loss of or damage to" requires something that alters the physical integrity of the property); *Ward Gen. Ins. Servs.*, 114 Cal. App. 4th at 556 ("direct physical loss" requires loss of something that "has a material existence, formed out of tangible matter, and is perceptible to the sense of touch"); *Universal Image Prods., Inc. v. Fed. Ins. Co*., 475 Fed. Appx. 569 (6th Cir. 2012) (requirement of "direct physical loss or damage" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* No. Civ. 98–434–HU, 1999 WL 619100, at *7 (D.Or. Aug.4, 1999) (exposure of clothing to elevated spore counts was not "physical loss" in the absence of a "distinct and demonstrable physical change to the garment necessitating some remedial action"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E. 2d 1130, 1144 (Ohio Ct. App. 2008) (holding that mold does not constitute "physical damage" because "[t]he presence of surface mold did not alter or affect the structural integrity of the [property]").

---

[2] Society will submit a copy of the written opinion of the court in *Gavrilides* when it becomes available.

Even if the virus that causes COVID-19 had been present on an insured premises, it would not constitute a "direct physical loss of or damage to" covered property caused by a Covered Cause of Loss, as it does not cause a tangible change to the physical characteristics of property. The virus is not incorporated into the structure of the property, does not require the physical alteration of the building for removal, and does not render the building unfit for use. Rather, the coronavirus can be removed from surfaces with soap and water and rendered inert with various common household disinfectants, including bleach. (SOF at ¶¶ 1-3.) Plaintiffs' alleged losses are at most economic losses, not a direct <u>physical</u> loss or damage.

This case is akin to *Universal Image* and *Mallestone*. In *Mallestone* the court held the policyholder failed to show a "physical loss to property" where mold had grown on the surface of the insured's exterior wood siding. 884 N.E. 2d at 1143-45. The court observed that the mold had merely grown on the surface of the wood, did not "attack" the wood itself, and could be removed through cleaning with basic household products, such as bleach. *Id.* The mold did not alter the siding itself, which would remain undamaged after cleaning, and was, therefore, not a physical loss. *Id.* at 1144-45. The fact that the mold would reoccur "in short order" and the siding would need regular cleaning did not transform the surface growth of mold into a physical loss. *Id.*

Similarly, in *Universal Image*, the Sixth Circuit affirmed a lower court ruling that Universal did not suffer any tangible, physical losses when it experienced a microbial contamination, including black mold capable of emitting spores, in the HVAC system of its leased premises. 475 Fed. Appx. at 570-73. The HVAC system had to be shut down for an extended period to perform cleaning. During this period, Universal's business "suffered severe disruptions," the poor ventilation caused temperatures to exceed 100 degrees, and Universal had to remove its operations from one of the floors it leased. *Id* at 570-71. As a result of the business disruption, Universal

vacated the premises entirely. *Id.* at 570-71. Nonetheless, the court held there was no "direct physical loss or damage" because there was no tangible damage to property, and the temporary, "difficult" conditions caused by the microbial contamination did not render the building completely uninhabitable or unusable. *Id.* at 573-75. While Universal did have to clean personal property with household cleaners to remove any possible mold or bacteria contaminant, these were economic losses, and did not constitute physical loss or damage. *Id.* at 573 (citing *Columbiaknit,* 1999 WL 619100, at *6 for holding that clothing is not physically damaged if "mere washing" would alleviate alleged damage).

As in *Mallestone* and *Universal Image*, even if the virus that causes COVID-19 were present, there would be no "direct physical loss of or damage to covered property." The virus can be removed with basic household cleaning products, and it does not harm or alter the structure or physical characteristics of the walls, countertops, doorknobs or any other part of Plaintiffs' properties. Therefore, there has been no "direct physical loss of or damage to covered property at the described premises" and no "Covered Cause of Loss" within the meaning of the Society Policies. *Eljer Mfg., Inc.*, 197 Ill. 2d at 301-02.

Further, the virus has not rendered Plaintiffs' <u>premises</u> unsafe, unusable, or uninhabitable. Rather, as is evidenced by the limitations imposed by Governor Pritzker's Executive Orders, it is <u>groups of people</u>, without adequate social distancing, that are unsafe regardless of location because of the risk of transmission. (SOF at ¶¶ 6, 8, 10, 14.) This distinction is demonstrated by the fact that under the March 16 Executive Order, restaurants and other facilities that serve food, including those owned by Plaintiffs, are allowed, encouraged, and are continuing to operate on their premises for the purposes of selling food and beverages for off-premises consumption. (*Id.* at ¶¶ 7, 12-14.) In fact, at least thirty-nine of Plaintiffs' businesses have been operating on their premises and

selling food for delivery and takeout during the time period that the Executive Orders were in effect. (*Id*. at ¶ 39-78.) The remaining Plaintiffs were allowed under the Executive Orders to sell food or packaged alcohol to-go for off-premises consumption, providing they had the appropriate type of local liquor license. (*Id*. at ¶¶ 23-26.) Further, all businesses, including those operated by Plaintiffs, were permitted to operate on premises for purposes of maintaining the facility, inventory, payroll, and similar Minimum Basic Operations. (*Id.* at 16.) Moreover, countless facilities throughout the country continue to operate even when the virus is known or suspected to be present, such as hospitals, medical clinics, grocery stores, dry cleaners, and hardware stores. Though the virus requires that precautions be taken in any space, it does not render premises uninhabitable or unusable and does not cause a direct physical loss of or damage to property. Consequently, Plaintiffs have not suffered the type of harm covered by the Society Policies, nor have they suffered a harm resulting from a Covered Cause of Loss. Therefore, there is no coverage under the Society Policies as a matter of law, and the Court should either dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted or, in the alternative, grant summary judgment in Society's favor.

### B. THE PARTIAL TEMPORARY LIMITATION OF PLAINTIFFS' OPERATIONS IMPOSED BY GOVERNOR PRITZKER'S EXECUTIVE ORDERS IS NOT A "PHYSICAL" LOSS OR DAMAGE AS A MATTER OF LAW.

The Executive Orders that temporarily limit the types of business operations Plaintiffs can perform on their premises do not, as a matter of law, constitute a "physical" loss or damage and thus are not a Covered Cause of Loss. The Executive Orders have resulted in a temporary, partial, and intangible limitation of business operations, similar to a change in zoning that alters the hours a business can be open or a temporary suspension of a liquor license, not an alteration in the physical characteristics of property.

The only court in Illinois to consider whether a limitation on use constitutes "physical" property damage rejected that proposition. In the context of a third-party liability policy, the court in *Mutlu v. State Farm Fire and Casualty* denied recovery where the insured sought coverage for the defense and indemnity of a lawsuit that alleged the insured deprived other condominium owners in his building of the use of hot water. 337 Ill. App. 3d 420, 423, 785 N.E. 2d 951 (Ill. App. Ct. 2003). The policy at issue insured against liability for property damage, defined as "physical damage to or destruction of tangible property, including loss of use." *Id.* at 426. The court found that under the Illinois Supreme Court's decision in *Eljer Manufacturing*, the loss of use of hot water did not constitute "physical" damage and thus held that there was no coverage for loss of use of tangible property unless physical damage or destruction was also shown. *Id.* at 431.

*Mutlu* is consistent with the opinions of sister courts considering first party property insurance policies. In *Roundabout Theatre Company v. Continental Casualty,* for example, the Appellate Division of the Supreme Court of New York held there was no "direct physical loss or damage" under an insurance policy where a plaintiff theater company lost all access to its premises due to a municipal order that closed the street the theater was located on. 302 A.D.2d 1 (N.Y. App. Div. 2002). The order was issued as a result of a construction accident on a nearby property, but the premises of the theater did not sustain any physical damage. *Id*. at 3. The street was closed for nearly a month "because of the substantial damage to the area and the danger from the partially collapsed scaffold." *Id*. As a result, the theater was completely inaccessible to the public and forced to cancel all performances. *Id*. The court rejected the plaintiff's argument that "loss" should be read as including "loss of use" and held the policy unambiguously required direct physical damage to the theater itself for coverage. *Id*. at 7; *see also, Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co*., 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (finding the words

10

"direct" and "physical" require "actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves") (emph. added); *Pentair v. Am. Guarantee and Liab. Ins.*, 400 F.3d 613, 615 (8th Cir. 2005) (loss of use and function of a factory during period it was without electricity was not a direct physical loss); *Source Food Tech. v. U.S. Fid. and Guaranty*, 465 F.3d 834, 835 (8th Cir. 2006) (loss of use, function, and access to beef product did not constitute a direct physical loss).

Courts have also found that reduced consumer demand resulting from a limitation on an insured's business operations at the insured premises due to a governmental order is not a "direct loss." *Brothers Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611 (D.C. 1970). In *Brothers*, the local government imposed a 5:30 p.m. curfew and prohibited the sale of alcoholic beverages in response to riots following the assassination of Martin Luther King, Jr. *Id.* at 611-12. The insured's policy covered "direct" losses to covered property from riot and civil commotion; however, the Court held that the policy did not provide coverage for the plaintiff's claims because the "business 'falloff'" resulting from the inability to conduct business on its premises after 5:30 p.m. was not a "direct" loss by a riot. *Id.* at 613. Rather, the court found that "[a]t the most, the loss incurred here was an indirect, if not remote loss resulting from riots." *Id.*

The Executive Orders have not altered the tangible, physical characteristics of the premises. They have caused nothing more than a temporary and partial limitation of allowable operations at Plaintiffs' premises, which is, at most, an economic loss and not a physical loss covered by the Society Policies. *Eljer Mfg.,* 197 Ill. 2d at 301-02. Therefore, as a matter of law there is no coverage under the Society Policies.

      **C.**    **THE PERIOD OF RESTORATION CLAUSE IS FURTHER EVIDENCE THAT "PHYSICAL" LOSS OR DAMAGE REQUIRES A TANGIBLE CHANGE IN THE PHYSICAL CHARACTERISTICS OF PROPERTY.**

The fact that the Business Income Additional Coverage of the Society Policies only provides coverage for loss of business income that was sustained during the "period of restoration" further demonstrates the meaning of the requirement of "physical" loss or damage. "Period of Restoration" begins with the "direct physical loss or damage" and ends on the earlier of "the date when the property at the described premises should be repaired, rebuilt or replaced" or "when business is resumed at a new permanent location." (SOF at ¶ 36.)

This Court is to construe the policy as a whole and give meaning to each provision. *Eljer Mfg.,* 1997 Ill. 2d at 292. The definition of "period of restoration" provides additional proof of the intended meaning of "physical loss or damage" as used in the Society Policies. Read together, it is clear the phrase "physical loss of or damage to" does not encompass a substance, like a virus, that can be removed with household cleaning products or a temporary limitation on the use of a property. Rather, it refers to a loss or damage that causes a physical alteration of the property that requires the property to be repaired, rebuilt, or replaced. *See, e.g.*, *Newman Myers*, 17 F. Supp. 3d at 332 (explaining that use of "repair" and "replace" in period of restoration clause "contemplates physical damage to the insured premises as opposed to loss of use of it"); *Roundabout Theatre*, 302 A.D.2d at 8 (same).

Here, there is no "period of restoration" because there is nothing on Plaintiffs' premises that needs to be repaired, rebuilt, or replaced. In fact, thirty-nine of the restaurants operated by Plaintiffs continued to use their premises to prepare and serve takeout and delivery during the period in which the Executive Orders were in effect. (SOF at ¶¶ 39-78.) Similarly, the remaining Plaintiffs' premises remain intact and they are allowed, under the Executive Orders, to sell food or alcohol for off-premises consumption. (*Id.* at 23-26.) Further, all businesses, including those operated by Plaintiffs, were permitted to operate on premises for purposes of maintaining the

12

facility, inventory, payroll, and similar Minimum Basic Operations.  (*Id.* at 16.) When determining the parties' intent, the policy must be read as a whole, "with the assumption that every provision was intended to serve a purpose."  *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013) (citations omitted) (citing *Founders Ins.*, 237 Ill. 2d at 433).  Adopting Plaintiffs' interpretation of "direct physical loss" would render the entire "period of restoration" clause meaningless since it would be illogical to define the end date for coverage as the completion of a "repair" if the property does not need to be repaired.

## II.  THERE IS NO COVERAGE UNDER THE CIVIL AUTHORITY ADDITIONAL COVERAGE PART.

The Civil Authority additional coverage part has a very specific set of terms and conditions that must be met.  To establish coverage under Civil Authority, Plaintiffs have the burden to establish  all four of the following elements: (1) damage to property other than property at the described premises that is caused by a Covered Cause of Loss, (2) an action by a civil authority that prohibits access to the described premises, (3) the action of civil authority prohibits access to the area immediately surrounding the damaged property, and the insured premises are within that area, and (4) the action of civil authority is taken in response to dangerous physical conditions that result from the property damage or continuation of the Covered Cause of Loss that caused the damage.  (SOF at ¶ 37.)  Plaintiffs have not and cannot establish a single one of these elements. The first element is absent because, for the reasons explained above, neither the Executive Orders' temporary limitation on Plaintiffs' business operations, nor the coronavirus, cause damage to property or are a direct physical loss.

The second element cannot be met because Plaintiffs' access to their premises has not been prohibited. While the Executive Orders limit the business operations that may be conducted on the premises, much like a zoning ordinance, they do not _prohibit_ access to the premises.  Rather,

Plaintiffs' restaurants are Essential Businesses under the Executive Orders and thus Plaintiffs have been allowed to access and use their premises to fulfill take-out and delivery orders. Even owners and employees of Non-Essential Businesses are allowed access to their premises in order to perform Minimum Basic Operations, such as processing payroll and employee benefits, ensuring security of the premises, maintaining inventory, and preserving the condition of the premises. (SOF at ¶ 16.) Actions of civil authority that limit business operations but do not prohibit access to the insured premises do not fall within the terms of Civil Authority provisions such as the one in the Society Policies. *See, e.g., Kean, Miller, Hawthorne, D'Armond McCowan & Jarman LLC v. Nat'l Fire Ins. Co. of Hartford,* No. 06-770-C, 2007 WL 2489711, at * 4 (M.D. La. Aug. 29, 2007) (no civil authority coverage for state of emergency declared as result of Hurricane Katrina where insured conceded employees had access to building); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, No. Civ.A. 02-106, 2002 WL 31996014, at * 2 (E.D. La. Sept. 30, 2002) (no civil authority coverage for hotel whose customers were prevented from accessing hotel by FAA's cancellation of flights).

For similar reasons, Plaintiffs cannot meet the third element, which requires an action of civil authority that prohibits access to the immediate area surrounding Plaintiffs' property. Plaintiffs appear to take the position that this element is met by the Executive Orders, which apply to the entire state of Illinois. The logical extension of this argument is that the Executive Orders prohibit access to the entire state of Illinois, which is clearly not the case. Thousands, if not millions, of employees of Essential Businesses go to work every day in Illinois, and the public streets and sidewalks throughout the state, including those surrounding Plaintiffs' premises, remain open and in use by the public. Essential Businesses are operating, and Non-Essential Businesses are carrying on Minimum Basic Operations. Residents are going to their favorite restaurants to

14

collect carry-out orders and performing other Essential Activities such as going to the grocery store, pharmacy, or engaging in "outdoor activity" by walking around the block.

Finally, the requirement that the action of civil authority was taken in response to dangerous conditions caused by damage to property other than the described premises cannot be met. First, there has been no property damage because, as discussed above, neither the virus that causes COVID-19 nor the Executive Orders entered in response to the virus have caused property damage. Second, the Executive Orders were entered to inhibit and slow the **future** transmission of COVID-19 between people, and actions taken to prevent a future harm do not trigger coverage under the Civil Authority additional coverage part of the Society Policies. *See, e.g., United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128, 129 (2d Cir. 2006) (no civil authority coverage for airline after federal government shutdown airport after 9/11 because order was issued due to risk of future terrorist attacks, not as result of damage to Pentagon); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) (civil authority coverage not triggered because evacuation order was issued due to future possible storm surge, high winds, and flooding based on projected path of Hurricane Gustav, not due to property damage already caused by Gustav in Caribbean); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.,* No. 09-6057, 2010 WL 4026375, at * 3 (E.D. La. Oct. 12, 2010) (civil authority coverage not triggered by evacuation order issued prior to arrival of Hurricane Gustav because order not issued as result of existing direct physical loss or damage to property); and *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins.,* --- F. Supp. 3d ---, No. 4:19-cv-00693, 2020 WL886120, at * 5-6 (D. S.C. Feb. 24, 2020) (civil authority coverage not triggered by evacuation order issued prior to arrival of Hurricane Florence).

Like the cases cited above, the Executive Orders were not issued because of any property damage, but instead to prevent a future harm, i.e., the *future* transmission of the virus between people. The timetable for fully reopening Plaintiffs' businesses to the public has nothing to do with repairing, mitigating, or responding to any property damage, or even the presence of the virus on property as of the date the orders were entered since the virus can be quickly removed in a matter of minutes with household cleaning products. Instead, the Executive Orders were to use social distancing to slow the rate of infection, and thus the timetable for fully reopening businesses in Illinois is tied to the percentage of positive COVID-19 cases, the rate of hospital admissions for COVID-19 like illnesses, and the available capacity of ICU beds and ventilators, instead of the time it would take to clean premises. (SOF at ¶ 28.) Thus, for all the reasons discussed above, there is no coverage available to Plaintiffs under the Civil Authority additional coverage part of the Society Policies.

### III.    THERE IS NO COVERAGE UNDER THE CONTAMINATION ADDITIONAL COVERAGE PART.

"Contamination" is defined in the policy as "a defect, deficiency, inadequacy or dangerous conditions in your products, merchandise, or premises." The Contamination additional coverage part pays for loss of business income and extra expense that is the result of "contamination" only in three limited scenarios. The first is when "contamination" "results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product." (*Id.* at ¶ 38.) The only "action of governmental authority" alleged by Plaintiffs is the Executive Orders. Thus, for Plaintiffs' losses to be covered under this section, the Executive Orders must have prohibited access to the described premises and have been the result of a "defect, deficiency, inadequacy or dangerous condition" in Plaintiffs' products, merchandise, or premises. As discussed above, the Executive Orders did not prohibit access to

16

any of Plaintiffs' premises, as many of the Plaintiffs are currently operating their businesses on their premises, and the remaining Plaintiffs are allowed to sell food or alcohol for delivery and takeout and access their premises for purposes of maintaining the facility, inventory, payroll, and similar Minimum Basic Operations. Moreover, the Executive Orders were not entered because of the presence of the virus that causes COVID-19 on any of Plaintiffs' premises. Accordingly, coverage is not available under this section of the Contamination additional coverage part.

The second scenario is when the insured's losses were caused by a "contamination threat," defined in the Society Policies as "a threat made by a third party against you to commit a 'malicious contamination' unless the third party's demand for money or other consideration is met." (SOF at ¶ 38.) Plaintiffs have made no allegations that they have been threatened by a third party with a malicious contamination, defined as "an intentional, malicious and illegal altercation or adulteration of your products." (*Id*.) This section of the Contamination additional coverage is not applicable to this situation and does not provide coverage for Plaintiffs' claimed losses.

The third and final scenario in which the Contamination additional coverage applies is where the losses are caused by "'[p]ublicity' resulting from the discovery or suspicion of contamination." (*Id*.) Under the Society Policies, "'[p]ublicity' means a publication or broadcast by the media, of the discovery or suspicion of 'contamination' at a described premise." (*Id*.) Thus, coverage would only be triggered under this section if there had been a media publication or broadcast regarding the actual or suspected presence of the virus that causes COVID-19 at the insured premises. Plaintiffs have not alleged, and Society is not aware, of any media publications or broadcasts discussing the presence of COVID-19 at any of the businesses operated by Plaintiffs. As a result, Plaintiffs' claimed loss fails to fall within the plain terms of the Society Policies and there is no coverage.

17

## IV.  THE ORDINANCE OR LAW EXCLUSION PREVENTS COVERAGE FOR PLAINTIFFS' CLAIMS.

In the alternative, even if Plaintiffs' could establish coverage under the Society Policies, their claims are barred by the ordinance or law exclusion, which provides that:

1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    a.  **Ordinance Or Law**
        The enforcement of or compliance with any ordinance or law:

        (1)  Regulating the construction, *use* or repair of any property; or

                 * * *
        This exclusion, Ordinance Or Law, applies whether the loss results from:

        (1)  An ordinance or law that is enforced even if the property has not been damaged; or

        (2)  The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

(SOF Ex. 10 at p. 16, § 1.a (emphasis added).)

Here, Plaintiffs allege that their losses were directly caused, at least in part, by the Executive Orders, which regulate the "use" of Plaintiffs' properties. (Compl. at ¶¶ 1, 101-06.) Much like zoning ordinances, the Executive Orders have temporarily limited how business owners, like the Plaintiffs, may use their property by regulating what kind of business operations can be performed on the Plaintiffs' property, who can be present on the property, and what persons can do when on the premises. The Executives Orders regulated which businesses are considered "essential" and "non-essential," whether customers can enter the premises, whether customers can remain on the premises beyond simply quickly picking up goods, the number of persons allowed

on the premises by requiring "social distancing," and whether and when the customers must wear face coverings.

The Society Policies, however, exclude losses caused by ordinance or laws that regulate the use of ay property. The exclusion applies whether the loss or damage was "caused directly or indirectly" by the ordinance or law and applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." As a result, because Plaintiffs allege their incurred losses were caused, at least in part, by the government orders regulating the use of the property, and such loses are excluded by the Society policies. *See Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922, 923 (N.Y. App. Div. 2015) (holding that ordinance or law exclusion precluded coverage where plaintiff's loss of business income was caused by the enforcement of law that required dental business to have a certificate of occupancy).

## V.   PLAINTIFFS' CLAIM FOR "STATUTORY BAD FAITH" FAILS BECAUSE THERE IS NO COVERAGE UNDER THE SOCIETY POLICIES AND A BONA FIDE COVERAGE DISPUTE.

Plaintiffs' claim under 215 ILCS 5/ 155 also fails as a matter of law and can be disposed of by dispositive motion. *See, e.g., Uhlich Children's Adv. Network v. Nat'l Union Fire Ins. Co.*, 929 N.E.2d 531, 543 (Ill. App. Ct.  2010) (affirming the dismissal of a section 155 bad faith claim on a motion to dismiss); *Am. Alliance Ins. Co. v. 1212 Restaurant Grp., L.L.C.*, 794 N.E.2d 892, 901 (Ill. App. Ct. 2003) (affirming entry of judgment on the pleadings in favor of insurance carrier on claim for under section 155).  This Court must strictly construe Section 155 of the Illinois Insurance Code because it is penal in nature and in derogation of the common law.  *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000); *Morris v. Auto-Owners Ins. Co.*, 239 Ill.App.3d 500, 509, 606 N.E. 2d 1299 (Ill. App. Ct. 1993).

Where, as in this case, there is no coverage under the policy, there can be no finding of vexatious and unreasonable conduct warranting an award of attorney fees under section 155. *See,*

*e.g.*, *Ill. State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468, 479 (Ill. App. Ct. 2012) ("But '[w]here the policy does not apply, there can be no finding that the insurer acted vexatiously and unreasonably [in denying the claim.]'") (quoting *Am. Family Mut. Ins. Co. v. Fisher Dev., Inc.*, 909 N.E. 2d 274, 284 (Ill. App. Ct. 2009)); *Hoover v. Country Mut. Ins. Co.*, 975 N.E.2d 638, 647 (Ill. App. Ct. 2012) ("[T]he statute presupposes an action on the policy, and therefore, in order for a plaintiff to recover under section 155, he must also succeed in the action on the policy."). Where the policy does not apply to the claimed losses, a claim under section 155 should be dismissed on a dispositive motion. *Cavenagh*, 983 N.E. 2d at 479.

Additionally, if there is a *bona fide* dispute regarding coverage—meaning a dispute that is real, genuine, and not feigned—statutory sanctions under section 155 are not appropriate. *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1023-24 (7th Cir. 2013); *One Place Condominium, LLC v. Travelers Property Cas. Magistrate Co.*, No. 11-C-2520, 2014 WL 1018192, at *15 (N.D. Ill. Mar. 17, 2014); *Baxter Int'l, Inc. v. Am. Guarantee and Liab. Ins. Co.*, 861 N.E. 2d 263, 272 (Ill. App. Ct. 2006). As demonstrated by Society's argument above, there is, at a minimum, a *bona fide* dispute regarding coverage of Plaintiffs' claims. Accordingly, this Court should enter an order either dismissing Plaintiffs' First Amended Complaint with prejudice pursuant to Rule 12(b)(6) or, in the alternative, granting summary judgment in Society's favor on Count III of Plaintiffs' First Amended Complaint.

## CONCLUSION

WHEREFORE, Defendant, Society Insurance, respectfully requests that this Honorable Court enter an order either dismissing Plaintiffs' First Amended Complaint with prejudice pursuant to Rule 12(b)(6) or, in the alternative, granting summary judgment in favor of Society on the  Plaintiffs' First Amended Complaint in its entirety; declaring there is no coverage for

Plaintiffs' claims under the Society Policies; and granting Society such other and further relief as this Court deems just.

| | |
|---|---|
| Thomas B. Underwood (#3122933) | Respectfully submitted, |
| Michael D. Sanders (##6230187) | |
| Michelle A. Miner (#6299524) | Society Insurance |
| Amy E. Frantz (#6312526) | |
| PURCELL & WARDROPE, CHTD. | |
| 10 South LaSalle Street, Suite 1200 | By:   /s/ Thomas B. Underwood     |
| Chicago, IL 60603 | Counsel for Defendant |
| (312) 427-3900 | |
| tbu@pw-law.com | |
| msanders@pw-law.com | |
| mminer@pw-law.com | |
| afrantz@pw-law.com | |