**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BIG ONION TAVERN GROUP, LLC, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | Hon. Judge Edmond Chang |
| v. | ) ) | Case No. 20-cv-2005 |
| SOCIETY INSURANCE, | ) ) | **<u>JURY TRIAL DEMANDED</u>** |
| Defendant. | ) ) | |

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S**
**<u>LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS</u>**

Plaintiffs, by and through their attorneys and pursuant to Local Rule 56.1(b)(3), hereby submit their Response ("Response") to Defendant Society Insurance's Local Rule 56.1 Statement of Undisputed Material Facts ("DSOF"). In support of this Response, Plaintiffs have included specific citations to supporting evidence located in (a) the Exhibits appended by Defendant to its DSOF; (b) Plaintiffs' Rule 56.1 Statement of Additional Facts that Require Denial of Summary Judgment ("PSOF ¶ __"); or (c) the Exhibits appended by Plaintiffs to their PSOF. For ease of the Court's review, additional exhibits attached to the PSOF have been numbered consecutively to continue the exhibit numbering in the DSOF; therefore, all exhibits are labeled as "Ex. __."

<u>**Response to Description of the Parties**</u>

Paragraphs I through LVII regarding the "Description of the Parties" are undisputed. *See* First Amended Complaint ¶¶ 22-77.

<u>**Response to Jurisdiction and Venue**</u>

Paragraphs LVIII, LIX, and LX regarding "Jurisdiction and Venue" are undisputed. *See* First Amended Complaint ¶¶ 78-81.

## Response to Undisputed Material Facts

### CDC Guidance Regarding COVID-19

1.      Attached as Exhibit 1 is a copy of the CDC's Guidance for Cleaning and Disinfecting Public Spaces, Workplaces, Businesses, Schools, and Homes, ("the CDC Guidance"), available at https://www.cdc.gov/coronavirus/2019-ncov/community/clean-disinfect/index.html (last visited June 9, 2020).

**RESPONSE**: Undisputed that Defendant has attached a document titled Guidance for Cleaning and Disinfecting dated April 28, 2020 but disputed that this document constitutes current CDC guidance. Moreover, Plaintiffs object to Paragraph 1 on the ground that any purported guidance in this document as immaterial because it does not set forth practices for cleaning and disinfecting indoor spaces like dining rooms, bars, or movie theaters. In fact, Exhibit 1 references a separate document prepared by the Food & Drug Administration entitled Best Practices for Restaurants and Bars. *See* PSOF ¶ 13; Ex. 53. Further, while the FDA Restaurant Guidance contemplates best practices for food preparation and take-out and delivery services, it does not provide guidance on how to prevent the spread of coronavirus when serving customers inside a dining room, bar, or theater, and in fact includes recommendations like "[d]iscontinu[e] operations, such as salad bars, buffets, and beverage service stations that require customers to use common utensils or dispensers." *Id.*

2.      According to the CDC Guidance, the virus that causes COVID-19 can be removed from surfaces using soap and water. (Ex. 1)

**RESPONSE**: Disputed. Exhibit 1 states that "cleaning with soap and water will decrease how much of the virus is on surfaces and objects, which reduces the risk of exposure," but it does not state that COVID-19 can be removed in all instances from surfaces with soap and water.

Further, Exhibit 1 recommends other practices to remove or prevent the spread of COVID-19, such as the use of EPA disinfectants and social distancing, and it recognizes that the measures that may be needed to reduce the risk of exposure may depend on whether a location is indoors or outdoors. Further disputed to the extent that Defendant is suggesting that COVID-19 is caused from contact with surfaces alone. According to research just published by the CDC:

> Reports of exposures in restaurants have been linked to air circulation. Direction, ventilation, and intensity of airflow might affect virus transmission, even if social distancing measures and mask use are implemented according to current guidance. Masks cannot be effectively worn while eating and drinking, whereas shopping and numerous other indoor activities do not preclude mask use.

*See* PSOF ¶ 14; Ex. 54. That same research found: "Adults with positive SARS-CoV-2 test results were approximately twice as likely to have reported dining at a restaurant than were those with negative SARS-CoV-2 test results." *Id.* Moreover, Plaintiffs object to Paragraph 2 as immaterial because it does not contain specific guidance for restaurants, bars, or movie theaters, which are designed to welcome customers without the need for constant cleaning and social distancing.

3.      According to the CDC Guidance, the virus that causes COVID-19 can be destroyed on surfaces using a number of ordinary household disinfectants, including bleach. (Ex. 1.)

**RESPONSE**: Disputed. Exhibit 1 does not state the COVID-19 can be "destroyed on surfaces." Plaintiffs also object to Paragraph 3 as immaterial for the reasons set forth above with respect to Paragraphs 1 and 2.

**Governor Pritzker's Social Distancing Orders**

4.      On March 16, 2020, Illinois Governor issued Executive Order 2020-07 ("the March 16 Order.)" A copy the March 16 Executive Order is attached as Exhibit 2.

**RESPONSE**: Undisputed.

5.      The March 16 Order states that "COVID-19 is a novel and severe acute respiratory illness that can spread among people through respiratory transmission." (Ex. 2 at 1.)

**RESPONSE**: Undisputed that Defendant has accurately quoted a portion of a sentence in the March 16 Order.

6. The March 16 Order further states that "social distancing, which consists of maintain [sic] at least a six-foot distance between people, is the paramount strategy for minimizing the spread of COVID-19." It goes on to say, "[T]he number of suspected COVID-19 cases in Illinois is increasing exponentially . . . indicating that drastic social distancing measures are needed." (*Id*. at 1-2.)

**RESPONSE**: Undisputed that Defendant has quoted parts of sentences found in the March 16 Order.

7. The March 16 Order provides that, beginning March 16, 2020 at 9 p.m., restaurants and bars "must suspend service for and may not permit on-premises consumption. Such businesses are permitted and encouraged to serve food and beverages so that they may be consumed off-premises, as currently permitted by law, through means such as in-house delivery, third-party delivery, drive-through, and curbside pick-up. In addition, customers may enter the premises to purchase food or beverages for carry out." (*Id*.)

**RESPONSE**: Undisputed that Defendant has quoted portions of the March 16 Order. However, Plaintiffs object to Paragraph 7 on the ground that whether restaurants and bars can provide in-house delivery, third-party delivery, drive-through, or curbside pick-up is immaterial to the question of whether the Plaintiffs have suffered physical loss of or damage to their premises due to the coronavirus and can no longer serve customers inside their dining rooms, bars, and/or theaters.

8. The reason for the prohibition of on-premises consumption of food at restaurants, as set forth in the March 16 Order, is because such public dining "usually involves prolonged close social contact contrary to recommended practice for social distancing." (*Id.* at 1.)

**RESPONSE**: Disputed. While Defendant has quoted a portion of a sentence in the March 16 Order, the March 16 Order does not purport to expressly state "[t]he reason for the prohibition of on-premises consumption of food at restaurants." In fact, the full sentence from which Defendant quotes states "Whereas, the Illinois Department of Public Health recommends Illinois residents avoid group dining in public settings, such as in bars and restaurants, which usually involves prolonged close and social contact contrary to recommended practice for social distancing," and the next sentence of the March 16 Order states "Whereas, frequently used surfaces in public settings, including bars and restaurants, if not cleaned and disinfected frequently and properly, also pose a risk of exposure." In addition, the next page of the March 16 Order states "the ongoing spread of COVID-19 and the danger the virus poses to the public's health and wellness require the reduction of on-premises consumption of food and beverages."

9. On March 20, 2020 Governor Pritzker issued executive order 2020-10 ("March 20 Order.") A copy of the March 20 Order is attached as Exhibit 3.

**RESPONSE**: Undisputed.

10. The March 20 Order required all businesses and operations in the state to cease, with the exception of "Essential Businesses," and prohibited gatherings of more than ten people. (Ex. 3, at 2, ¶¶ 2-3.)

**RESPONSE**: Disputed. The March 20 Order allowed certain businesses to continue "minimum Basic Operations" as defined in the March 20 Order and it did not prohibit families of more than ten people from gathering. Ex. 3, at 2, ¶¶ 2-3.

11.     The March 20 Order states that it was entered into "for the preservation of public health and safety throughout the entire State of Illinois and to ensure that our healthcare delivery system is capable of serving those who are sick . . . [and] to slow and stop the spread of COVID-19." (Ex. 3 at 1.)

**RESPONSE**: Undisputed that Defendant has quoted a portion of a recital in the March 20 Order.

12.     Essential Businesses under the March 20 Order include "[r]estaurants and other facilities that prepare and serve food, but only for consumption off-premises, through such means as in-house delivery, third-party delivery, drive through, curbside pick-up, and carry-out." (*Id*. at 6-7, ¶12(l).)

**RESPONSE**: Undisputed that Defendant has quoted a portion of Paragraph 12(l) of the March 20 Order, however Plaintiffs object to this Paragraph as immaterial, because the Order did not permit restaurants, bars, or theaters to continue serving customers in dining rooms, bars, or theaters. For example, the March 20 Order expressly stated:

3.  **Prohibited activities.** All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes permitted by this Executive Order. Pursuant to current guidance from the CDC, any gathering of more than **ten** people is prohibited unless exempted by this Executive Order. Nothing in this Executive Order prohibits the gathering of members of a household or residence.

    All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed to the public.

Ex. 3, ¶ 3. Further, in its entirety, Paragraph 12(l) (cited by Plaintiffs) states as follows:

l.  **Restaurants for the consumption off-premises.** Restaurants and other facilities that prepare and serve food, but only for consumption off-premises, through such means as in-house delivery, third-party delivery, drive-through, curbside pick-up, and carry-out. Schools and other entities that typically provide food services to students or

members of the public may continue to do so under this Executive Order on the condition that the food is provided to students or members of the public on a pick-up and takeaway basis only. Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site due to the virus's propensity to physically impact surfaces and personal property. This Executive Order is consistent with and does not amend or supersede Section 1 of Executive Order 2020-07 (COVID-19 Executive Order No. 5) <u>except that</u> Section 1 is ordered to be extended through April 7, 2020.

Ex. 3, ¶ 12(l).

13. Essential Businesses were encouraged to remain open. (*Id.* at 2, ¶ 2.)

**<u>RESPONSE</u>**: Undisputed, but Plaintiffs object to this paragraph as immaterial to the question of whether they suffered a physical loss of or damage to their restaurants, bars, or theaters due to the spread of the novel coronavirus. Moreover, this statement is highly misleading, because the document Defendant cites did not permit Plaintiffs to continue serving customers on their premises. For further answer, the Paragraph that Defendant cites states in full:

2. **<u>Non-essential businesses and operations must cease.</u>** All businesses and operations to the State, except Essential Businesses and Operations as defined below, are required to cease all activities within the State except Minimum Basic Operations, as defined below. For clarity, businesses may also continue operations consisting exclusively of employees or contractors performing activities at their own residences (i.e., working from home).

All Essential Businesses and Operations are encouraged to remain open. To the greatest extent feasible, Essential Businesses and Operations shall comply with Social Distancing Requirements as defined in this Executive Order, including by maintaining six-foot social distancing for both employees and members of the public at all times, including, but not limited to, when any customers are standing in line.

Ex. 3, ¶ 2.

14. The March 20 Order requires Essential Businesses, to the greatest extent feasible, to "comply with Social Distancing Requirements as defined in this Executive Order, including by maintaining six-foot social distancing for both employees and members of the public at all times." (*Id.* at p. 2, ¶ 2.)

**RESPONSE**: Undisputed, but Plaintiffs object to this paragraph as immaterial to the question of whether they suffered a physical loss of or damage to their restaurants, bars, or theaters due to the spread of the novel coronavirus.

15.     Individuals were allowed to leave their homes for "Essential Activities" and obtaining and delivering food are "Essential Activities" under the March 20 Order. (*Id*. at 3, ¶ 5(b).)

**RESPONSE**: Undisputed, but Plaintiffs object to this paragraph as immaterial to the question of whether they suffered a physical loss of or damage to their restaurants, bars, or theaters due to the spread of the novel coronavirus. Moreover, Plaintiffs state that eating inside restaurants, gathering in bars, or visiting theaters were not deemed "Essential Activities" under the March 20 Order.

16.     Under the March 20 Order, Non-Essential Businesses are allowed to perform Minimum Basic Operations on their premises, including processing payroll and employee benefits, ensuring security of the premises, maintaining inventory, and preserving the condition of the premises. (*Id*. at p. 2, ¶ 2, p. 8, ¶ 13.)

**RESPONSE**: Undisputed, but Plaintiffs object to this paragraph as immaterial to the question of whether they suffered a physical loss of or damage to their restaurants, bars, or theaters due to the spread of the novel coronavirus.

17.     Under the March 20 Order, "Outdoor Activity," including running, walking, hiking, or biking is an Essential Activity, as is shopping for "necessary supplies and services," including household consumer products. (*Id*. at 3, ¶ 5(b-c).)

**RESPONSE**: Undisputed, but Plaintiffs object to this paragraph as immaterial to the question of whether they suffered a physical loss of or damage to their restaurants, bars, or theaters due to the spread of the novel coronavirus.

18.     On April 1, Governor Pritzker executed Executive Order 2020-18 ("April 1 Order"), a copy of which is attached as Exhibit 4.

**RESPONSE**: Undisputed.

19.     Attached as Exhibit 5 is a copy of Executive Order 2020-33, which was issued by Governor Pritzker on April 30, 2020.

**RESPONSE**: Undisputed.

20.     Attached as Exhibit 6 is a copy of Executive Order 2020-32, which was issued by Governor Pritzker on April 30, 2020.

**RESPONSE**: Undisputed.

21.     The Executive Orders attached as Exhibits 2-6 hereto do not prohibit Plaintiffs from accessing their premises.

**RESPONSE**: Disputed. The Executive Orders restrict Plaintiffs' "freedom or ability to obtain or make use of something," specifically, their businesses. *See* "access," Merriam-Webster's Dictionary, *available at* https://www.merriam-webster.com/dictionary/access?src=search-dict-hed. Moreover, the Executive Orders prohibit Plaintiffs from accessing their premises for the purpose of serving customers inside restaurants, bars, and theaters as the Plaintiffs intended to do before the novel coronavirus outbreak began to create dangerous physical conditions in the indoor spaces in their properties such that the Executive Orders were necessary. These Executive Orders also prohibit Plaintiffs from accessing the premises of other Plaintiffs.

22. The Executive Orders attached as Exhibits 2-6 hereto do not prohibit access to public spaces such as streets or sidewalks surrounding the insured premises.

**RESPONSE**: Disputed. The Executive Orders prohibited access to public spaces except for the limited purposes expressly permitted in the Executive Orders.

23. Attached as Exhibit 7 is a copy of a document entitled Illinois Liquor Control Commission March 31 COVID-19: Compliance Directive.

**RESPONSE**: Undisputed.

24. The Illinois Liquor Control Commission interpreted Governor Pritzker's orders as allowing bars and taverns to receive the delivery of beer, wine, and liquor from wholesalers, and, if allowed by local ordinance, to sell and deliver alcohol for off-premises consumption as long as they follow the appropriate social-distancing guidelines. (*Id.*)

**RESPONSE**: Disputed. The document attached as Exhibit 7 is a "Compliance Directive," and the Illinois Liquor Control Commission did not purport to interpret Governor Pritzker's orders. Moreover, Plaintiffs object to this paragraph as immaterial to the question of whether they suffered a physical loss of or damage to their restaurants, bars, or theaters due to the spread of the novel coronavirus.

25. Attached as Exhibit 8 is a document issued by the Chicago Department of Business Affairs and Consumer Protection ("BACP").

**RESPONSE**: Undisputed.

26. The BACP guidance provided that holders of a license for consumption on premises-incidental activity as well as holders of a tavern liquor license can sell and deliver incidental packaged goods liquor. (*Id.*)

**RESPONSE**: Undisputed, but Plaintiffs object to this paragraph as immaterial to the question of whether they suffered a physical loss of or damage to their restaurants, bars, or theaters due to the spread of the novel coronavirus.

27.     Attached as Exhibit 9 is a copy of the document "Restore Illinois: A Public Health Approach to Safely Reopen Our State," issued by the Office of Governor JB Pritzker on May 5, 2020.

**RESPONSE**: Undisputed.

28.     The timetable for fully reopening Plaintiffs' businesses is tied to the percentage of positive COVID-19 cases, the rate of hospital admissions for COVID-19 like illnesses, and the available capacity of ICU beds and ventilators. (Ex. 9.)

**RESPONSE**: Disputed, and Plaintiffs object to this paragraph as immaterial to the question of whether they suffered a physical loss of or damage to their restaurants, bars, or theaters due to the spread of the novel coronavirus. Among other things, the document cited by Defendant states: "This five-phased plan will reopen our state, guided by health metrics with distinct businesses, education, and recreation activities characterizing each phase. This is an ***initial framework that will likely be updated as research and science develop*** and as the potential for treatments or vaccines is realized. The plan is based upon regional healthcare availability, and it recognizes the distinct impact COVID-19 has had on different regions of our state as well as regional variations in hospital capacity." Ex. 9, at 4 (emphasis added). As is contemplated in Exhibit 9, the "research and science" continue to develop. For instance, "evidence emerged about the disease spreading in crowded rooms – especially at bars, restaurants, and churches – suggesting that airborne virus particles were the main cause of transmission." *See* PSOF ¶ 11; Ex. 52.

Further disputed because, on July 15, 2020, Illinois released an update to Restore Illinois regarding "Actions to Combat a Resurgence of COVID-19," which provided for a "menu of mitigation options organized by risk level." *See* PSOF ¶ 23; Ex. 56. Multiple regions within Illinois have been subject to such mitigation efforts to prevent uncontrollable spread, including Region 7, which includes Will and Kankakee Counties just to the south of the City of Chicago—which mitigation efforts include the prohibition of indoor service at bars and restaurants. *See* PSOF ¶ 24; Ex. 57.

**The Society Policies**

29.     Society and Plaintiffs entered into the following Businessowners insurance contracts, each of which contain the Businessowners Special Property Coverage Form TBP2 (05-15) ("the Special Property Coverage Form").

- Big Onion Tavern Group LLC, Policy No. BP18003904-1

- Headquarters Beercade LLC, Policy No. BP17034010-6

- Machine 1846 LLC, Policy No. BP18010967-2

- The New 400 LLC, Policy No. BP16015184-3

- Harper Theater LLC, Policy No. BP560202-7

- Welcome Back LLC, Policy No. BP18035428-1

- Legacy Hospitality LLC, Policy No. BP18012824-1

- McBrides Aurora Inc., Policy No. TRM 591971-4

- McBride's Pub Inc., Policy No. TRM 554796-7

- McBride's on 52 Inc., Policy No. TRM 577259-6.

- Homeslyce Is Where the Heart Is LLC, Policy No. BP17001670

- Happy Camper Pizzeria LLC, Policy No. BP15015198-4

- 3458 Norclark Restaurant LLC, Policy No. BP19020696-0

- 1913 Northco LLC, Policy No. BP18022240-1

- 108 Kinzie, LLC, Policy No. BP16019733-3

- All Day Broadway LLC, Insurance, Policy No. ROP 587018-5

- Harlen-Rascals, Inc., Policy No. ROP 591472-5

- Calm & Chaos LLC, Policy No. BP19034909-0

- YMPV Inc., Policy No. TRM 587377-5

- The Burger Philosophy LLC, Policy No. ROP 556637-7

- Gountanis Enterprises, Inc., Policy No. TRM 453931-13

- 806 W Randolph LLC, Policy No. TRM 587111-6

- 2450 N Milwaukee LLC, Policy No. ROP 587461-5

- Queen Mary LLC, Policy No. BP15028744-4

- Roberta Nowakowski Inc., Policy No. TRM 588422-7

- A Pitzalla Blues LLC, Policy No. TRM 586323

- Rambuttan LLC, Policy No. ROP 589265

- 1270 Storefront LLC, Policy No. Policy No. BP18028827-1

- Munster Taverns, Inc., Policy No. ROP 591587-9

- Clark 5260 LLC, Policy No. ROP 591586-8

- Wells 1525 LLC, Policy No. ROP 591586-8.

- Andersonville 5310 LLC, Policy No. BP17036401-2

- Ovie Bar & Grill LLC, Policy No. TRM 587442-5

- Sancerre Hospitality I LLC, Policy No. BP17018107

- The Barrelman Tavern Inc., Policy No. TRM 586232-5

- Exit Plan Holdings LLC, Policy No. BP19032216-1

- 3471 N Elston Inc., Policy No. BP17005737

- Olmar Corp Inc., Policy No. BP19012524-0

- 3478 N Clark Street Inc., Policy No. BP18016167-1

- Rookies 5-Roselle Inc., Policy No. BP18030586-1

- OR1 Inc., Policy No. BP18018024-1

- Alexanders Cafe 64 Inc., Policy No. BP18026058-1

- Alexanders Restaurant Inc., Policy No. BP18009148-0

- BK & MM Ventures LLC, Policy No. BP18013215-1

- Triple K & A Sports Bar Inc., Policy No. BP20009226-0

- Double K & A Inc, Policy No. BP20007290-0

- Village Squire of McHenry Inc., Policy No. BP18017753-1

- Village Squire Inc., Policy No. BP18015294-1

- Village Squire North Inc., Policy No. BP18015405-1

- Village Squire South Inc., Policy No. BP18007073-1

- Tai's Lounge Inc., Policy No. BP20002730

- Woodfire Brick Oven Pizza LLC, Policy No. BP16039985-3

- 540 West Madison Hospitality Group LLC, Policy No. BP19012098-2

- TS2 Inc., Policy No. BP19039842-0

- Niche Restaurant Group LLC, Policy No. ROP 514325

**RESPONSE**: Undisputed.

30.     A copy of the Special Property Coverage Form is attached hereto as Exhibit 10.

**RESPONSE**: Undisputed.

31.     Plaintiffs claim they are entitled to coverage under the Business Income, Extra Expenses, and Civil Authority, additional coverage parts in the Special Property Coverage Form of the Society Policies. (Ex. 10 at ¶¶ 13-14, 16.)

**RESPONSE**: Undisputed.

32.     Part A of the Special Property Coverage Form is the section that provides and defines the coverage available. Part A provides, in part:

**A.     Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.     Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. . . .

**a.     Buildings**, meaning the buildings and structures at the premises described in the Declarations . . .

**b.     Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of described premises, including: . . .

(*Id*. at p.1, ¶ A.1)

**RESPONSE**: Undisputed that Defendant has quoted a portion of Part A of the Special Property Coverage Form but disputed that the portions quoted define the full scope of coverage available under the policy, which must read as a whole.

33.     The term Covered Cause of Loss is defined in Section 3 of Part A and states:

**3.     Covered Causes Of Loss**

Direct Physical Loss unless the loss is excluded or limited under this coverage form.

(*Id*. at p.2, ¶ A.3.)

**RESPONSE**: Undisputed.

34.     The Business Income additional coverage of the Special Property Coverage Form provides, in part:

**5.      Additional Coverages**

**g.      Business Income**

    **(1)      Business Income**

        **(a)**     We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by a direct physical loss of or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

        **(b)**     We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.

\* \* \* \*

(*Id*. at p. 5, ¶ A.5.g.)

**RESPONSE**: Undisputed that Defendant has quoted a portion of the language appearing in the Business Income section of the policy.

35.     "Period of Restoration" refers to the period of time that:

    a.     Begins immediately after the time of direct physical loss or damage for Business Income or Extra Expense coverage caused by or resulting from any covered Cause of Loss at the described premises; and

    b.     Ends on the earlier of:

        (1)     The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2)     The date when business is resumed at a new permanent location.

(*Id*. at p. 31, ¶ H.12.)

**RESPONSE**: Undisputed that Defendant has quoted part of the "Period of Restoration" definition in the policy.

36. The additional coverage for Extra Expense provides, in part:

> **(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

(*Id*. at p. 6, ¶ A.5.h.)

**RESPONSE**: Undisputed that Defendant has quoted part of the "Extra Expense" insuring agreement in the policy.

37. The Civil Authority additional coverage provides, in part:

> **k.** **Civil Authority**
>
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> > **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within the area; and
> >
> > **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id*. at p. 7, ¶ A.5.k.)

**RESPONSE**: Undisputed that Defendant has quoted part of the Civil Authority Section of the policy.

38. The Contamination additional coverage provides, in part:

> If your "operations" are suspended due to "contamination":

* * *

(2)     We will also pay for the actual loss of Business Income and Extra Expense you sustain caused by:

     (a)     "Contamination" that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product.

     (b)     "Contamination threat"

     (c)     "Publicity" resulting from the discovery or suspicion of contamination.

* * *

(4)     Additional Definitions:

     (a)     "Contamination" means a defect, deficiency, inadequacy or dangerous conditions in your products, merchandise, or premises.

     (b)     "Contamination threat" means a threat made by a third party against you to commit a "malicious contamination" unless the third party's demand for money or other consideration is met.

     (c)     "Malicious contamination" means an intentional, malicious and illegal altercation or adulteration of your products

     (d)     "Publicity" means a publication or broadcast by the media, of the discovery or suspicion of "contamination" at a described premise.

(*Id*. at p. 8, ¶ A.5.m.)

**RESPONSE**: Undisputed that Defendant has quoted part of the additional Contamination coverage part.

**Plaintiffs' Businesses**

39.     Legacy Hospitality LLC d/b/a The VIG fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 11.) Attached as Exhibit 11 is an image of an April 20, 2020 post by the Facebook account for The VIG captured from the Facebook page for The VIG.

**RESPONSE**: Disputed that Plaintiffs "fulfilled orders" during the effective period of Governor Pritzker's Executive Orders, including to the extent that Plaintiffs have been forced to shut down in part or in whole due to COVID-19 exposures and positive tests. *See, e.g.*, PSOF ¶¶ __-__; Exs. __-__. Undisputed that restaurants and other facilities were permitted to prepare and serve food for consumption off-premises through such means as delivery and carry-out (Ex. 3, ¶ 12(l)), and further undisputed that the referenced Exhibit purports to be a screenshot from Facebook. Plaintiffs further object to this Paragraph on the ground that whether restaurants and bars can provide delivery or carry-out is immaterial under Fed. R. Civ. P. 56(a) to the question of whether the Plaintiffs have suffered physical loss of or damage to their premises due to the coronavirus because they can no longer serve customers inside their dining rooms, bars, and/or theaters. Plaintiffs further note that discovery has not yet started and so this Exhibit, which appears to be a screenshot, cuts off part of the page, does not include earlier Facebook posts from Plaintiffs referencing the fact that their dining rooms were closed, has not been produced, and has not been authenticated.

40. McBrides Aurora Inc. d/b/a McBrides Pub & Grill North fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 12.) Attached as Exhibit 12 are images of March 15, 2020 and April 6, 2020 posts by the Facebook account for McBrides Pub & Grill North captured from the Facebook page for McBrides Pub & Grill North.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

41. McBride's Pub Inc. d/b/a McBride's fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-

6, were in effect. (Ex. 13.) Attached as Exhibit 13 is an image of a March 28, 2020 post by the Facebook account for McBride's captured from the Facebook page for McBride's.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

42.     McBride's on 52 Inc. d/b/a McBride's on 52 fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 14.) Attached as Exhibit 14 is an image of a March 15, 2020 post by the Facebook account for McBride's on 52 captured from the Facebook page for McBride's on 52.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

43.     Homeslyce Is Where the Heart Is LLC d/b/a Homeslice Wheel House fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 15.) Attached as Exhibit 15 is an image of an April 1, 2020 post by the Facebook account for Homeslice Wheel House captured from the Facebook page for Homeslice Wheel House.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

44.     Happy Camper Pizzeria LLC d/b/a Happy Camper Old Town fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 16.) Attached as Exhibit 16 is an image of a March 18, 2020 post by the Facebook account for Happy Camper Old Town captured from the Facebook page for Happy Camper Old Town.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

45.     3458 Norclark Restaurant LLC d/b/a Happy Camper Wrigleyville fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 17.) Attached as Exhibit 17 is an image of a March 19, 2020 post by the Facebook account for Happy Camper Wrigleyville captured from the Facebook page for Happy Camper Wrigleyville.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

46.     1913 Northco LLC d/b/a Paradise Park fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 18.) Attached as Exhibit 18 is an image of a March 19, 2020 post by the Facebook account for Paradise Park captured from the Facebook page for Paradise Park.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

47.     108 Kinzie, LLC d/b/a Mercadito fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 19.) Attached as Exhibit 19 are images of March 17, 2020 and April 30, 2020 posts by the Facebook account for Mercadito captured from the Facebook page for Mercadito.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

48.     All Day Broadway LLC, Insurance d/b/a Ceres Table fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as

Exhibits 2-6, were in effect. (Ex. 20.) Attached as Exhibit 20 is an image of a May 26, 2020 post by the Facebook account for Ceres Table captured from the Facebook page for Ceres Table.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

49.     Harlen-Rascals, Inc. d/b/a Gale Street Inn fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 21.) Attached as Exhibit 21 is an image of an April 22, 2020 post by the Facebook account for Gale Street Inn captured from the Facebook page for Gale Street Inn.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

50.     Calm & Chaos LLC d/b/a The Irish Legend fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 22.) Attached as Exhibit 22 is an image of a March 19, 2020 post by the Facebook account for The Irish Legend captured from the Facebook page for The Irish Legend.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

51.     The Burger Philosophy LLC d/b/a Little Bad Wolf fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 23.) Attached as Exhibit 23 is an image of a March 17, 2020 post by the Facebook account for Little Bad Wolf captured from the Facebook page for Little Bad Wolf.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

52.     Gountanis Enterprises, Inc. d/b/a Gojo's Café fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 24.) Attached as Exhibit 24 is an image of a March 16, 2020 post by the Facebook account for Gojo's Café captured from the Facebook page for Gojo's Café.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

53.     2450 N Milwaukee LLC d/b/a Estereo fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 25.) Attached as Exhibit 25 is an image of a March 25, 2020 post by the Facebook account for Estereo captured from the Facebook page for Estereo.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

54.     Roberta Nowakowski Inc. d/b/a The Sportsman's Club fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 26.) Attached as Exhibit 26 is an image of a May 20, 2020 post by the Facebook account for The Sportsman's Club captured from the Facebook page for The Sportsman's Club.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

55.     Rambuttan LLC d/b/a Pub Royale Queen Mary LLC fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 27.) Attached as Exhibit 27 is an image of a March 17, 2020 post

by the Facebook account for Pub Royale Queen Mary LLC captured from the Facebook page for Pub Royale Queen Mary LLC.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

56. Munster Taverns, Inc. d/b/a Wilde Bar & Restaurant fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 28.) Attached as Exhibit 28 is an image of a March 17, 2020 post by the Facebook account for Wilde Bar & Restaurant captured from the Facebook page for Wilde Bar & Restaurant.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

57. Clark 5260 LLC d/b/a Lady Gregory's fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 29.) Attached as Exhibit 29 is an image of a March 17, 2020 post by the Facebook account for Lady Gregory's captured from the Facebook page for Lady Gregory's.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

58. Andersonville 5310 LLC d/b/a Octavio Cantina & Kitchen fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 30.) Attached as Exhibit 30 is an image of a March 20, 2020 post by the Facebook account for Octavio Cantina & Kitchen captured from the Facebook page for Octavio Cantina & Kitchen.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

59.     Ovie Bar & Grill LLC d/b/a O'vie Bar & Grill fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 31.) Attached as Exhibit 31 are images of March 16, 2020 and March 23, 2020 posts by the Facebook account for O'vie Bar & Grill captured from the Facebook page for O'vie Bar & Grill.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

60.     Sancerre Hospitality I LLC d/b/a BLVD Chicago fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 32.) Attached as Exhibit 32 is an image of a March 20, 2020 post by the Facebook account for BLVD Chicago captured from the Facebook page for BLVD Chicago.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

61.     Olmar Corp Inc. d/b/a Cheesie's fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 33.) Attached as Exhibit 33 is an image of a March 16, 2020 post by the Facebook account for Cheesie's captured from the Facebook page for Cheesie's.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

62.     3478 N Clark Street Inc. d/b/a Roadhouse 66 Gas N Grill fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached

hereto as Exhibits 2-6, were in effect. (Ex. 34.) Attached as Exhibit 34 is an image of a March 16, 2020 post by the Facebook account for Roadhouse 66 Gas N Grill captured from the Facebook page for Roadhouse 66 Gas N Grill.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

63.     BK & MM Ventures LLC d/b/a Rookies 1 All American Sports fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 35.) Attached as Exhibit 35 is an image of a March 24, 2020 post by the Facebook account for Rookies captured from the Facebook page for Rookies.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

64.     Triple K & A Sports Bar Inc. d/b/a Rookies 3 All American Pub & Grill fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 35.) Attached as Exhibit 35 is an image of a March 24, 2020 post by the Facebook account for Rookies captured from the Facebook page for Rookies.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

65.     Double K & A Inc. d/b/a Rookies 4 All American Pub & Grill fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 35.) Attached as Exhibit 35 is an image of a March 24, 2020 post by the Facebook account for Rookies captured from the Facebook page for Rookies.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

66.     Rookies 5-Roselle Inc. fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 35.) Attached as Exhibit 35 is an image of a March 24, 2020 post by the Facebook account for Rookies captured from the Facebook page for Rookies.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

67.     OR1 Inc. d/b/a Old Republic Kitchen & Bar fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 36.) Attached as Exhibit 36 is an image of a March 16, 2020 post by the Facebook account for Old Republic Kitchen & Bar captured from the Facebook page for Old Republic Kitchen & Bar.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

68.     Alexanders Cafe 64 Inc. fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 37.) Attached as Exhibit 37 is an image of a March 16, 2020 post by the Facebook account for Alexanders Cafe 64 captured from the Facebook page for Alexanders Cafe 64.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

69.     Alexanders Restaurant Inc. fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in

effect. (Ex. 37.) Attached as Exhibit 37 is an image of a March 16, 2020 post by the Facebook account for Alexanders Restaurant captured from the Facebook page for Alexanders Restaurant.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

70.     Village Squire of McHenry Inc. fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 38.) Attached as Exhibit 38 are images of a March 16, 2020, March 24, 2020 and April 27, 2020 posts by the Facebook account for Village Squire Restaurants captured from the Facebook page for Village Squire Restaurants.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph. Further disputed because Exhibit 38 does not contain an image of any Facebook post dated March 24, 2020.

71.     Village Squire Inc. d/b/a Village Squire Restaurant fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 38.) Attached as Exhibit 38 are images of a March 16, 2020, March 24, 2020 and April 27, 2020 posts by the Facebook account for Village Squire Restaurants captured from the Facebook page for Village Squire Restaurants.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph. Further disputed because Exhibit 38 does not contain an image of any Facebook post dated March 24, 2020.

72.     Village Squire North Inc. fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 38.) Attached as Exhibit 38 are images of a March 16, 2020, March 24, 2020 and April

27, 2020 posts by the Facebook account for Village Squire Restaurants captured from the Facebook page for Village Squire Restaurants. Further disputed because Exhibit 38 does not contain an image of any Facebook post dated March 24, 2020.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

73. Village Squire South Inc. d/b/a Village Squire fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 38.) Attached as Exhibit 38 are images of a March 16, 2020, March 24, 2020 and April 27, 2020 posts by the Facebook account for Village Squire Restaurants captured from the Facebook page for Village Squire Restaurants.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph. Further disputed because Exhibit 38 does not contain an image of any Facebook post dated March 24, 2020.

74. Woodfire Brick Oven Pizza LLC fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 39.) Attached as Exhibit 39 are images of an April 16, 2020 and April 18, 2020 post by the Facebook accounts for Woodfire captured from the Facebook pages for Woodfire.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph. Further disputed because Exhibit 39 does not contain an image of any Facebook post dated April 16, 2020 or April 18, 2020.

75. 540 West Madison Hospitality Group LLC d/b/a Slightly Toasted fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 40.) Attached as Exhibit 40 is an image of a

March 16, 2020 post by the Facebook account for Slightly Toasted captured from the Facebook page for Slightly Toasted.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

76.     TS2 Inc. d/b/a Houndstooth Saloon fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 41.) Attached as Exhibit 41 is an image of a March 18, 2020 post by the Facebook account for Houndstooth Saloon captured from the Facebook page for Houndstooth Saloon.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

77.     Niche Restaurant Group LLC d/b/a Niche Restaurant fulfilled orders for delivery and carry-out during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 42.) Attached as Exhibit 42 is an image of a March 17, 2020 post by the Facebook account for Niche Restaurant captured from the Facebook page for Niche Restaurant.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

78.     Harper Theater, LLC fulfilled orders for carry-out of concession items during the period in which Governor Pritzker's Executive Orders, attached hereto as Exhibits 2-6, were in effect. (Ex. 43) Attached as Exhibit 43 is an image of Harper Theater's website, harpertheater.com, taken on June 12, 2020.

**RESPONSE**: Plaintiffs adopt their response to Paragraph 39 as and for their response to this Paragraph.

Respectfully submitted,

Dated: September 11, 2020

/s/ Patrick M. Collins
Patrick M. Collins
Livia M. Kiser
Christopher J. O'Malley
Andrew J. Chinsky
KING & SPALDING LLP
353 N. Clark Street, 12th Floor
Chicago, IL 60654
(312) 995-9333
pcollins@kslaw.com
lkiser@kslaw.com
comalley@kslaw.com
achinsky@kslaw.com

Shelby S. Guilbert, Jr.
Joseph Englert
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
(404) 572-4600
sguilbert@kslaw.com
jenglert@kslaw.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 11, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: *<u>/s/ Patrick M. Collins</u>*
Patrick M. Collins